### WILSON v. J. G. WILSON CORP.

(District Court, E. D. Virginia. March 17, 1917.)

MASTER AND SERVANT ⬤➔62—INVENTIONS BY EMPLOYÉ—RIGHT OF EMPLOYER TO USE.

Complainant, while in the employ of a manufacturing corporation as its chief engineer, charged especially with the duty of developing its business and keeping its products abreast of the times, designed a number of improved devices in connection therewith, which were patented in his name, but at the sole expense of the corporation, which used the inventions in connection with its manufactures for several years, without payment or claim for royalties. *Held* that, while complainant held the legal and beneficial title to the patents as against others, the corporation was entitled to a right in and an indefeasible license to use the patented inventions as against complainant and his assignees, and that, on a sale of the stock of the corporation, a new corporation, organized by the purchasers, which took over all its property and business, succeeded to such right and license.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 71.]

In Equity. Suit by Lester G. Wilson against J. G. Wilson Corporation, with cross-bill. Decree for defendant on original bill, and for complainant on the cross-bill.

The facts in this case may be briefly stated as follows:

James G. Wilson was the founder of the business of manufacturing rolling shutters, rolling doors, etc., which he established in 1876, and conducted the same at Olean, N. Y., under the name of the James G. Wilson Manufacturing Company, an unincorporated concern. As the business increased, it became necessary to enlarge its operations, and in the year 1903 the company was

incorporated; James G. Wilson becoming president and owning 94 per cent. of the capital stock. In that year the factory was moved to Norfolk, Va., maintaining an office in New York City.

Lester G. Wilson, the complainant in this suit, an adopted son of James G. Wilson, who had then recently graduated from Columbia College as a mechanical engineer, was placed in the factory to learn the business, and subsequently, upon the factory being moved to Norfolk, he was made engineer in charge of the steel department, the drafting room, and mechanical work, at a high salary.

During the employment of the said Lester G. Wilson it was part of his duty to design improvements, as the needs of customers required, or as were necessary, looking to keeping the company abreast of the times in the conduct of its business. Such improvements, when deemed of sufficient importance, were patented in the name of the said Lester G. Wilson, the company paying all expenses connected with the making of models, furnishing material, etc., the work being done in the company's factory, and the costs and expenses incident to procuring the patents, including attorney's fees, were likewise borne and paid by the company.

The patents secured were as follows: No. 917,983, cable release for fire-resisting shutter, patented April 13, 1909. No. 929,741, wicket door for rolling shutters, patented August 3, 1909. No. 929,742, mechanism for operating rolling metallic shutters, patented August 3, 1909. No. 939,650, electrical controlling system for rolling or sliding shutters, elevators, etc., patented November 9, 1909. No. 945,660, electrical trolley device, patented January 4, 1910. No. 972,426, fire-resisting shutter, patented October 11, 1910.

During this entire period, Percy H. Wilson had been connected with the company, as factory manager, at Olean, N. Y., and as vice president, general manager, and director, after the removal to Norfolk, and he had been continuously in the employ of the company for 30-odd years. He owned 160 shares of the capital stock of the company.

On the 29th day of April, 1914, James G. Wilson, desiring to retire from the business, gave an option on his stock holdings in the company, of 2,693 shares, to Moss & Moss, of Norfolk Va., brokers, together with the patents standing in the name of the said James G. Wilson. The said Percy H. Wilson, together with several associates, acquired the stock of the said James G. Wilson from the said Moss & Moss, under the option, and formed a new corporation, under the name of the "J. G. Wilson Corporation," taking over the entire assets and stock of the said James G. Wilson Manufacturing Company, and merged the old company into and continued the business under the new corporation, the only apparent difference being that James G. Wilson retired from the company, and the word "Corporation" was substituted for "Manufacturing Company," as used by the old concern. The stock was acquired in the fall of 1914, and the new company took over the business on the 1st day of December, 1914.

Under the new company, Lester G. Wilson, the complainant, was continued as engineer, at a large salary, and remained with the company for some six months. A few days after the consummation of the sale aforesaid the complainant asserted a claim against the new corporation, for royalties from the 1st of December, 1914, on the patents which had been issued to him while employed as engineer of the old company as aforesaid, and claimed the absolute ownership of said patents, which claims were denied by the corporation.

The said Lester G. Wilson, although connected with the business from 1893 to 1915, never demanded royalties of the old company for the use of the patents, nor claimed to be the owner thereof, nor were any royalties ever paid to him; the company claiming to be the equitable owner of the rights under the patents, if not the owner of the patents, and to have the right to use the same, without return of any kind. A short time after giving the option upon the stock as aforesaid, to wit, on the 22d day of May, 1914, James G. Wilson, while still president of the old company, but acting individually, delivered to the complainant the six letters patent standing in his name as aforesaid, and informed him that the same belonged to him. This action of

the said James G. Wilson seems to have been taken without the knowledge of the company, or by its authority, and the said Percy H. Wilson, vice president and general manager and director, had no knowledge thereof.

The said Lester G. Wilson is now permitting his present employers, competitors of the new corporation, to use the rights under said patents in the manufacture of folding shutters and doors.

Williams, Tunstall & Thom, of Norfolk, Va., for complainant.

D. Lawrence Groner, of Norfolk, Va., for defendant.

WADDILL, District Judge (after stating the facts as above). The object of this suit is to determine the ownership of the letters patent aforesaid, issued by the United States to the complainant, Lester G. Wilson.

Complainant avers that the defendant corporation is engaged in using and infringing his said letters patent, and prays for an injunction, an accounting, and profits and damages arising from the infringement.

The defendant corporation denies infringement on its part, and insists that, in the circumstances under which the patents were issued, it has at least a shop right in and a perpetual license to use the patents, and by its cross-bill sets up a claim of ownership to the patents, and avers that, while the several patents were issued in the name of the complainant, they were one and all procured by him while in the employ of the James G. Wilson Manufacturing Company, a corporation engaged in the manufacture of rolling doors, rolling shutters, and partitions in bronze, steel, and wood, and of which this corporation is the successor, the complainant securing said patents while he was chief engineer of said company, charged especially with the duty of developing its business, and with devising and procuring such improvements as would tend to develop and keep the defendant's products up to a high standard and abreast of the times; that the inventive skill exercised and the mechanical work done was while complainant was in the employ of the defendant, and as a part of his employment, and the same was done at its cost and expense in every respect, from the furnishing of material used, to the employment of counsel in procuring the patents, and the payment of the patent office fees.

The case was heard on bill and answer, and cross-bill and answer thereto, and upon the evidence adduced, most of which was taken orally at the hearing, and the conclusion reached by the court, upon consideration of all the evidence, and the facts and circumstances surrounding the same, and the law applicable thereto, is:

First. That the complainant was not entitled to claim any of said patents as against his employer, the James G. Wilson Manufacturing Company, by reason of the circumstances under which they were procured, and that said company was entitled to a right in and indefeasible license to the use of said patents, as against the complainant and his assignees. McClurg v. Kingsland, 1 How. 202, 11 L. Ed. 102; Solomons v. United States, 137 U. S. 342, 11 Sup. Ct. 88, 34 L. Ed. 667; Gill v. United States, 160 U. S. 426, 16 Sup. Ct. 322, 40 L. Ed. 480; Wilson v. American Circular Loom Co., 187 Fed. 840, 109 C. C. A. 600; Schmidt v. Central Foundry Co. (D. C.) 218 Fed. 466.

Second. That the defendant J. G. Wilson Corporation, which acquired the stock of the James G. Wilson Manufacturing Company, and became the lawful successor thereof, changing the name from the James G. Wilson Manufacturing Company to the J. G. Wilson Corporation, likewise is entitled to a right in and irrevocable license to the use of the said patents, as the lawful successor of the said James G. Wilson Manufacturing Company, as against the said complainant and his assigns. The suggestion that the right in and license to use said letters patent is a personal one, existing in favor of the James G. Wilson Manufacturing Company, and does not, in the absence of an express contract, pass to the defendant company, is not well taken, and cannot be maintained, for the reason that the defendant company is but a continuation of its predecessor company, and the complainant in good faith and fair dealing is as completely estopped from claiming the right here set up against one as the other. In a word, these patents were procured by the complainant while in the predecessor company's employ, with a view to the successful transaction of its business, and they are no less essential to the successor corporation's operation of its business than they were to the original company; and to allow the original company to sell and dispose of its stock and assets, which included these patent rights and privileges, and which added to the value of the assets, at a profit, and then to give the patents, or relinquish their privileges in them, to one having the relation to the business that the complainant had, would operate as a fraud upon the successor company. Lane & Bodley Co. v. Locke, 150 U. S. 193, 14 Sup. Ct. 78, 37 L. Ed. 1049; Lightner v. Boston & Albany R. R., 1 Lowell, 338, Fed. Cas. No. 8,343.

Third. That the complainant, subject to the rights of the defendant, as herein set forth, is the owner of the letters patent. Taking into account the circumstances under which these patents were issued, as above indicated, there is much force in the position of the defendant company, under the doctrine laid down in Solomons v. United States, 137 U. S. 342, 346, 11 Sup. Ct. 88, 34 L. Ed. 667, supra, and Gill v. United States, 160 U. S. 426, 435, 16 Sup. Ct. 322, 40 L. Ed. 480, supra, that the James G. Wilson Manufacturing Co., in whose employment complainant was at the time the patents were procured, became the owner of the same, and that the complainant was merely the legal owner, and held a naked trusteeship in such patents, with no beneficial interest therein, still the court, upon the whole evidence and under the authorities, inclines to the view that he is the beneficial owner of the patents, subject to the free and unlimited use thereof by the defendant corporation, the successor to the James G. Wilson Manufacturing Company, without royalty or charge of any kind. Hapgood v. Hewitt, 119 U. S. 226, 7 Sup. Ct. 193, 30 L. Ed. 369; Pressed Steel Car Co. v. Hanson, 137 Fed. 403, 71 C. C. A. 207, 2 L. R. A. (N. S.) 1172, 1182, and note.

A decree in consonance with the views herein expressed will be entered on presentation.