**PACKARD INSTRUMENT COMPANY, Inc., Plaintiff-Appellee,**

**v.**

**ANS, INC., name changed to Ansitron, Inc., Dero Research and Development Corporation and Ansitron, Inc., Defendants-Appellants.**

Nos. 614–616, Dockets 33392–33394.

United States Court of Appeals
Second Circuit.

Argued June 5, 1969.

Decided June 18, 1969.

---

1. Glasser v. United States, 1941, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680.

Martin London, New York City (Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, Martin London, Roy A. Heimlich, Robert S. Smith, New York City, on the brief), for appellants.

Daniel A. Pollack, New York City (Pollack, Greenspoon & Singer, Daniel A. Pollack, Martin I. Kaminsky, New York City, on the brief), for appellee.

Before WATERMAN, FRIENDLY and KAUFMAN, Circuit Judges.

PER CURIAM:

In 1964 Packard Instrument Company, Inc. initiated a patent infringement suit against ANS, Inc. The following year this litigation was settled when the parties exchanged paid-up, royalty free licenses for the disputed external standardization feature which is used in connection with a liquid scintillation spectrometer. The spectrometer is a device that measures infinitesimal radiations from particles; the external standardization feature calibrates the spectrometer to a known standard. Both licenses recited that they were "personal," and contained limitations on their assignability and transferability.[1]

A brief statement of the events which followed is in order. After the settlement, in April 1965, defendant Dero Research and Development Corp. (Dero) began purchasing all of the outstanding ANS stock, which it finally acquired by December. At the same time it "ingested" ANS (whose name was changed to Ansitron, Inc. in December 1965), moved all its furniture, fixtures, and inventory to Dero's plant, and treated it on its books as though it were a division or subsidiary.

In January 1966, Dero and Ansitron entered into an exclusive distributorship, sales, and service agreement with the Picker X-Ray Corporation (Picker), under which Picker distributed the entire product line of spectrometers. In April 1967, Dero filed a certificate of dissolution for Ansitron with the Connecticut Secretary of State and later commenced negotiations with Picker for the sale of the entire Ansitron brand spectrometer product line, including the disputed patent license. The following April Dero formed a new wholly-owned subsidiary, Ansitron, Inc., a Connecticut corporation (Ansitron II).

In November 1968, Packard began this suit to enjoin Ansitron, Dero, and Ansitron II from either continuing to use the patent, or transferring it to anyone else. The substance of Packard's claim is that the license it granted ANS in 1965 was personal, and could be assigned or transferred only once. It contends also, that ANS and its successors have through their corporate changes either allowed the license to lapse, or are in any case forbidden by the terms of the license to sell it to Picker or anyone

---

1. In pertinent part, the document provides:
    "1. Packard hereby grants to ANS a paid up, nonexclusive license, without the right to grant sublicenses to make, use, sell and practice the invention
    * * *
    *    *    *    *    *
    "8. The rights and privileges under license grants and covenant not to sue herein given by Packard to ANS are personal, and shall not be transferred or assigned, except (a) if Packard shall give prior written consent to ANS for the transfer or assignment of such rights and privileges, (b) if the entire ownership and business of ANS is transferred by sale, merger, or consolidation, such rights and privileges of ANS may be assigned to its successor, or (c) if the entire manufacturing know-how, assets and product line of ANS relating to liquid scintillation spectrometers is sold, such rights and privileges of ANS may be assigned to the purchaser."

else. To prevent that sale, Packard sought and obtained the preliminary injunction from which this appeal is taken.

Judge Zavatt construed the relevant paragraph of the licensing agreement set out in footnote 1 to be "clear and unambiguous." He also held that it limited the license to one transfer or assignment, and that this assignment had in effect taken place when ANS was merged into Dero. Relying on his finding of no ambiguity, he stated he would refuse to consider parol evidence introduced by the defendants to explain the understanding of the parties with respect to the disputed paragraph. It is of interest, however, that he clearly relied on some parol evidence submitted by ANS to show that "an acquisition of ANS was being contemplated by some unknown third party" at the time that the negotiations for the license agreement were under way. The court therefore relied on parol evidence to support the interpretation urged by Packard, but rejected it for a different interpretation. Since we cannot agree that the licensing agreement was unambiguous, we believe the parol evidence offered by ANS should have been received.

 The rules guiding an appellate court in its review of a preliminary injunction are clear and therefore a brief recital is all that is necessary here. A preliminary injunction will be overturned only if the trial court abused its discretion. See United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); Societe Comptoir de L'Industrie, etc., Inc. v. Alexander's Department Store, Inc., 299 F.2d 33, 1 A. L.R.3d 752 (2d Cir.1962).

 The decision to grant or to deny a preliminary injunction depends in part on a flexible interplay between the likelihood of irreparable harm to the movant and the court's belief that there is a "reasonable certainty" that the movant will succeed on the merits at a final hearing. Unicon Management Corp. v. Koppers Management Co., 366 F.2d 199 (2d Cir.1966). While our reading of the disputed paragraph might render Packard's ultimate victory at trial somewhat less certain than Judge Zavatt believed, it does not disturb the district judge's finding that Packard was in danger of suffering irreparable harm if the proposed sale of the patent license was consummated. Accordingly, given the present posture of this case, we believe the interests of the parties and the efficient administration of justice will be best served by permitting the preliminary injunction to stand on condition that Dero is granted a preference for an immediate trial on the merits.[2] See Fed.R.Civ.P. 65(a) (2), authorizing the advancement of the case for trial and the admissibility of certain evidence introduced at the preliminary hearing, on the trial.

In sum, the grant of the preliminary injunction is affirmed with instructions to the District Court to grant a preference and an early trial on the injunction issues.

2. We recognize that Dero may be unable to prepare its counterclaims in time for the expedited trial. It may receive a separate trial on these issues.