MINCK BROS. & CO., Plaintiff,

v.

YOO–HOO CHOCOLATE BEVERAGE CORP. a/k/a Yoo–Hoo Beverage Company of the State of New Jersey, and Cott Corp., Defendants.

No. 69–C–719.

United States District Court
E. D. New York.

July 18, 1969.

Royall, Koegel & Wells, New York City, for defendant, Stuart A. Jackson, New York City, of counsel.

Botein, Hays, Sklar & Herzberg, New York City, for plaintiff, Charles A. Stillman, New York City, of counsel.

Robert J. Hecker, White Plains, N. Y., for Cott Corp.

## OPINION ON APPLICATION FOR PRELIMINARY INJUNCTION

JUDD, District Judge.

The court has completed hearings on plaintiff's application for a preliminary injunction to prevent defendants Yoo-Hoo Chocolate Beverage Corp. (Yoo-Hoo) and Cott Corp. (Cott) from selling a chocolate drink on Long Island in alleged violation of an exclusive distribution contract made in 1962 between Yoo-Hoo and plaintiff Minck Bros. & Co.

The drink distributed by Cott is manufactured and bottled by Yoo-Hoo and is substantially similar to the Yoo-Hoo beverage, but is sold under the name Chocko. The labels and the bottles and packages in which Chocko is sold resemble the former Yoo-Hoo labels, bottles and packages, but Yoo-Hoo has recently adopted a different color scheme and package style for the products it now distributes under the Yoo-Hoo name.

The complaint charges both Yoo-Hoo and Cott with violation of its exclusive marketing rights and also charges Cott with unfair competition.

The court ruled in a memorandum after the original argument of the motion that the interpretation of the distribution agreement was open to doubt, particularly as to whether there was an implied covenant that Yoo-Hoo would not compete with its exclusive distributor by

marketing a chocolate drink under a different name.

◼ The determination whether to grant a preliminary injunction in order to maintain the status quo depends on a preliminary estimate of the plaintiff's chances of success, followed by a weighing of the relative hardship to the two sides in granting or denying temporary relief. Judge Frank said in Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953):

"To justify a temporary injunction it it not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i. e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation."

This ruling was reiterated in Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319, 323 (2d Cir. 1969). It is also consistent with the recent decision in Packard Instrument Co., Inc. v. Ans, Inc., 416 F.2d 943 (2d Cir. June 18, 1969), where a preliminary injunction was sustained in connection with the alleged violation of an ambiguous licensing agreement, even though the Court of Appeals considered plaintiff's chance of ultimate victory to be somewhat less certain than the district judge believed.

### Chances of Success

◼ The court directed the attention of the parties at the evidentiary hearing to two specific questions, in view of assertions at the oral argument that the plaintiff had known of a custom in the industry for manufacturers to bottle and distribute under private labels as well as in their own name, and in view of the possibility that plaintiff's rights under the distribution agreement might have been impaired by its transfer of actual selling responsibilities to New York American Beverage Corp.

The court heard testimony on plaintiff's behalf from Charles Wald, its president, Nathaniel Whitehorn, an attorney who assisted plaintiff in the preparation of the 1962 agreement, and George Franklin, one of the jobbers or routemen who distribute Yoo-Hoo in Brooklyn and Queens. For the defendants, Dr. Max Geller, chairman of the board and chief executive officer of the Yoo-Hoo corporation, was the only witness.

The answers to the two specific questions were clearly of no help to defendants. On the case as a whole, the testimony did not dispel the doubts expressed in the court's original memorandum concerning the interpretation of the distribution agreement, and it lent added force to the claim based on unfair competition.

Mr. Wald and Mr. Whitehorn testified that no mention was made during the negotiation of the 1962 agreement concerning any intent by Yoo-Hoo to reserve the right to sell a chocolate drink under a different label in competition with plaintiff, and Mr. Wald had no knowledge of any industry practice to use private labels for competitive marketing. The 1962 agreement was to some extent a "do-it-yourself" product of the two clients, with only sporadic participation by their attorneys. Dr. Geller's recollection of the 1962 agreement was vague, but did not contradict plaintiff's witnesses.

On the second question, the written evidence is clear that Yoo-Hoo gave its written approval to the pooling of interests of Minck Bros. & Co. and New York American Beverage Co., Inc.

The question whether Mr. Wald protested forcefully against an earlier arrangement under which Yoo-Hoo produced a chocolate beverage called Devil-Shake for the distributors of Pepsi Cola is irrelevant. The circumstances were in no way comparable to the present arrangements between Yoo-Hoo and Cott.

In the first place, Mr. Wald was a director of the Yoo-Hoo corporation at the time and could not in good conscience obstruct an agreement which promised $1,000,000 in cash to a company whose working capital was then only $44,000.* In the second place, Dr. Geller is a very persuasive person, and his sincere belief that the massive advertising energies of Pepsi Cola would create a larger market for chocolate drinks generally, and thus benefit the Yoo-Hoo distributors, was enough to overcome objections at the time. Finally, Devil-Shake differed in appearance and formula from Yoo-Hoo.

The Yoo-Hoo-Cott arrangements appear to be a second example of do-it-yourself drafting. They were negotiated with Cott by Mr. Stern, the new president of Yoo-Hoo, to whom Dr. Geller was hoping to turn over his responsibilities.

The letter which embodied the agreement was so vague that, when Mr. Stern was felled by a heart attack, Dr. Geller had to consult with Cott to find out what his company had undertaken to do.

The only witness who gave testimony concerning the actual operation under the Cott transaction testified that a Cott salesman endeavored to sell Chocko to one of his customers by telling him that it was made by the Yoo-Hoo people and tasted like Yoo-Hoo. Dr. Geller testified that his instructions were that the beverage made by Cott should have a different color and a different formula and should not be as good as Yoo-Hoo, and that in fact a different colored product for Chocko had been exhibited to him the day before the hearing. The Chocko hitherto distributed, Dr. Geller agreed, looked like Yoo-Hoo, and there is uncontradicted evidence that they taste alike.

If the balance of hardship favors plaintiff, the questions which it has raised are sufficiently serious, substantial and difficult to justify litigation and more deliberate investigation.

### The Question of Hardship

There is no evidence that Cott or Yoo-Hoo would suffer any irreparable hardship from the grant of a preliminary injunction. Yoo-Hoo's marketing area now extends from New York to Florida, with projected expansion into more than fifty foreign countries. Cott is a multi-million dollar corporation with multi-state distribution, dealing in all flavors of soda. It can sell its products in all the rest of the metropolitan area, even if it is excluded from selling Chocko in the territory in which plaintiff is the distributor. An affidavit predicting large profits for Cott was not particularized with any proof at the hearing concerning probable sales in plaintiff's territory.

Plaintiff's operation is divided into two different parts. In Nassau and Suffolk Counties, it operates through master jobbers who handle a substantial variety of products, and who would suffer only moderate financial losses if Chocko competition is permitted to continue pending the trial of the action.

In Kings County and Queens County, plaintiff's operation is conducted through about twenty independent jobbers or routemen, who cannot so easily wait until plaintiff collects damages, if it is ultimately determined that they have lost sales through illegal competition by the defendants. During the time when Pepsi Cola was competing, one of them suffered such severe loss of sales that he had to moonlight as a cab driver during two nights a week.

Plaintiff faces a substantial risk of losing experienced jobber-routemen if competition of the Cott chocolate drink in Kings and Queens is permitted, and then terminated after the trial. In considering hardship to plaintiff, it is not necessary to find that any routemen will quit. The fact that they will suffer hardship, and that they are part of plaintiff's operation is sufficient.

On the basis of all the facts, it appears appropriate to grant a preliminary in-

---

* The corporate minutes indicate that the Pepsi Cola transaction was also a factor in obtaining a $500,000 loan from Prudential Life Insurance Company.

junction against sales by Cott in Kings and Queens Counties, but not in Nassau and Suffolk Counties.

In view of the relatively inconsequential damages which the defendants may suffer, a bond of $5,000 should be adequate.

Findings of fact and conclusions of law are being filed herewith.

Submit injunction order on notice of two working days.