**PPG INDUSTRIES, INC., Plaintiff-Appellant (77–3166), Plaintiff-Appellee (77–3167),**

v.

**GUARDIAN INDUSTRIES CORPORATION, Defendant-Appellee (77–3166), Defendant-Appellant (77–3167).**

**Nos. 77–3166, 77–3167.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 6, 1979.

Decided May 4, 1979.

William H. Webb, John M. Webb, Webb, Burden, Robinson & Webb, Pittsburgh, Pa., Robert B. Gosline, Toledo, Ohio, for PPG Industries, Inc. in both cases.

Bernard J. Cantor, Richard D. Grauer, Cullen, Settle, Sloman & Cantor, Detroit, Mich., David A. Katz, Spengler, Nathanson, Heyman, McCarthy & Durfee, Toledo, Ohio, for Guardian Industries Corp. in both cases.

Brian Sullivan, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for PPG Industries, Inc. in No. 77–3167.

Before LIVELY, KEITH and MERRITT, Circuit Judges.

LIVELY, Circuit Judge.

The question in this case is whether the surviving or resultant corporation in a statutory merger acquires patent license rights of the constituent corporations. The plaintiff, PPG Industries, Inc. (PPG), appeals from a judgment of the district court dismissing its patent infringement action on the ground that the defendant, Guardian Industries, Corp. (Guardian), as licensee of the patents in suit, was not an infringer. Guardian cross-appeals from a holding by the district court that its alternate defense based on an equipment license agreement was ineffective. The district court opinion is reported at 428 F.Supp. 789 (N.D.Ohio 1977).

I

Prior to 1964 both PPG and Permaglass, Inc., were engaged in fabrication of glass products which required that sheets of glass be shaped for particular uses. Independently of each other the two fabricators developed similar processes which involved "floating glass on a bed of gas, while it was being heated and bent." This process is known in the industry as "gas hearth technology" and "air float technology"; the two terms are interchangeable. After a period of negotiations PPG and Permaglass entered into an agreement on January 1, 1964 whereby each granted rights to the other under "gas hearth system" patents already issued and in the process of prosecution. The purpose of the agreement was set forth in the preamble as follows:

WHEREAS, PPG is desirous of acquiring from PERMAGLASS a world-wide exclusive license with right to sublicense others under PERMAGLASS Technical Data and PERMAGLASS Patent Rights, subject only to reservation by PERMAGLASS of non-exclusive rights thereunder; and

WHEREAS,' PERMAGLASS is desirous of obtaining a nonexclusive license to use Gas Hearth Systems under PPG Patent Rights, excepting in the Dominion of Canada.

This purpose was accomplished in the two sections of the agreement quoted below:

## SECTION 3. GRANT FROM PERMAGLASS TO PPG

3.1 Subject to the reservation set forth in Subsection 3.3 below, PERMAGLASS hereby grants to PPG an exclusive license, with right of sublicense, to use PERMAGLASS Technical Data in Gas Hearth Systems throughout the United States of America, its territories and possessions, and all countries of the world foreign thereto.

3.2 Subject to the reservation set forth in Subsection 3.3 below, PERMAGLASS hereby grants to PPG an unlimited exclusive license, with right of sublicense, under PERMAGLASS Patent Rights.

3.3 The licenses granted to PPG under Subsections 3.1 and 3.2 above shall be subject to the reservation of a non-exclusive, non-transferable, royalty-free, world-wide right and license for the benefit and use of PERMAGLASS.

## SECTION 4. GRANT FROM PPG TO PERMAGLASS

4.1 PPG hereby grants to PERMAGLASS a non-exclusive, non-transferable, royalty-free right and license to heat, bend, thermally temper and/or anneal glass using Gas Hearth Systems under PPG Patent Rights, excepting in the Dominion of Canada, and to use or sell glass articles produced thereby, but no license, express or implied, is hereby granted to PERMAGLASS under any claim of any PPG patent expressly covering any coating method, coating composition, or coated article.

Assignability of the agreement and of the license granted to Permaglass and termination of the license granted to Permaglass were covered in the following language:

## SECTION 9. ASSIGNABILITY

9.1 This Agreement shall be assignable by PPG to any successor of the entire flat glass business of PPG but shall otherwise be non-assignable except with the consent of PERMAGLASS first obtained in writing.

9.2 This Agreement and the license granted by PPG to PERMAGLASS hereunder shall be personal to PERMAGLASS and non-assignable except with the consent of PPG first obtained in writing.

## SECTION 11. TERMINATION

\*　　\*　　\*　　\*　　\*　　\*

11.2 In the event that a majority of the voting stock of PERMAGLASS shall at any time become owned or controlled directly or indirectly by a manufacturer of automobiles or a manufacturer or fabricator of glass other than the present owners, the license granted to PERMAGLASS under Subsection 4.1 shall terminate forthwith.

Eleven patents are involved in this suit. Nine of them originated with Permaglass and were licensed to PPG as exclusive licensee under Section 3.2, *supra,* subject to the non-exclusive, non-transferable reservation to Permaglass set forth in Section 3.3. Two of the patents originated with PPG. Section 4.1 granted a non-exclusive, non-transferable license to Permaglass with respect to the two PPG patents. In Section 9.1 and 9.2 assignability was treated somewhat differently as between the parties, and the Section 11.2 provisions with regard to termination apply only to the license granted to Permaglass.

As of December 1969 Permaglass was merged into Guardian pursuant to applicable statutes of Ohio and Delaware. Guardian was engaged primarily in the business of fabricating and distributing windshields for automobiles and trucks. It had decided to construct a facility to manufacture raw glass and the capacity of that facility would be greater than its own requirements. Permaglass had no glass manufacturing capa-

bility and it was contemplated that its operations would utilize a large part of the excess output of the proposed Guardian facility.

The "Agreement of Merger" between Permaglass and Guardian did not refer specifically to the 1964 agreement between PPG and Permaglass. However, among Permaglass' representations in the agreement was the following:

(g) Permaglass is the owner, assignee or licensee of such patents, trademarks, trade names and copyrights as are listed and described in Exhibit "C" attached hereto. None of such ·patents, trademarks, trade names or copyrights is in litigation and Permaglass has not received any notice of conflict with the asserted rights of third parties relative to the use thereof.

Listed on Exhibit "C" to the merger agreement are the nine patents originally developed by Permaglass and licensed to PPG under the 1964 agreement which are involved in this infringement action.

Shortly after the merger was consummated PPG filed the present action, claiming infringement by Guardian in the use of apparatus and processes described and claimed in eleven patents which were identified by number and origin. The eleven patents were covered by the terms of the 1964 agreement. PPG asserted that it became the exclusive licensee of the nine patents which originated with Permaglass under the 1964 agreement and that the rights reserved by Permaglass were personal to it and non-transferable and non-assignable. PPG also claimed that Guardian had no rights with respect to the two patents which had originated with PPG because the license under these patents was personal to Permaglass and non-transferable and non-assignable except with the permission of PPG. In addition it claimed that the license with respect to these two patents had terminated under the provisions of Section 11.2, *supra,* by reason of the merger.

One of the defenses pled by Guardian in its answer was that it was a licensee of the patents in suit. It described the merger with Permaglass and claimed it "had succeeded to all rights, powers, ownerships, etc., of Permaglass, and as Permaglass' successor, defendant is legally entitled to operate in place of Permaglass under the January 1, 1964 agreement between Permaglass and plaintiff, free of any claim of infringement of the patents . . .."

After holding an evidentiary hearing the district court concluded that the parties to the 1964 agreement did not intend that the rights reserved by Permaglass in its nine patents or the rights assigned to Permaglass in the two PPG patents would not pass to a successor corporation by way of merger. The court held that there had been no assignment or transfer of the rights by Permaglass, but rather that Guardian acquired these rights by operation of law under the merger statutes of Ohio and Delaware. The provisions of the 1964 agreement making the license rights of Permaglass non-assignable and non-transferable were held not to apply because of the "continuity of interest inherent in a statutory merger that distinguishes it from the ordinary assignment or transfer case." 428 F.Supp. at 796.

With respect to the termination provision in Section 11.2 of the 1964 agreement, the district court again relied on "the nature of a statutory merger in contrast to an outright sale or acquisition of stock" in holding that a majority of the voting stock of Permaglass did not become owned or controlled by Guardian. 428 F.Supp. at 796.

II

■ Questions with respect to the assignability of a patent license are controlled by federal law. It has long been held by federal courts that agreements granting patent licenses are personal and not assignable unless expressly made so. *Unarco Industries, Inc. v. Kelley Company,* 465 F.2d 1303, 1306 (7th Cir. 1972), *cert. denied,* 410 U.S. 929, 93 S.Ct. 1365, 35 L.Ed.2d 590 (1973). This has been the rule at least since 1852 when the Supreme Court decided *Troy Iron & Nail v. Corning,* 55 U.S. (14 How.) 193, 14 L.Ed. 383 (1852). See Annotation, *Assigna-*

*bility of licensee's rights under patent licensing agreement.* 66 A.L.R.2d 606. The district court recognized this rule in the present case, but concluded that where patent licenses are claimed to pass by operation of law to the resultant or surviving corporation in a statutory merger there has been no assignment or transfer.

There appear to be no reported cases where the precise issue in this case has been decided. At least two treatises contain the statement that rights under a patent license owned by a constituent corporation pass to the consolidated corporation in the case of a consolidation, *W. Fletcher, Cyclopedia of the Law of Corporations* § 7089 (revised ed. 1973); and to the new or resultant corporation in the case of a merger, *A. Deller, Walker on Patents* § 409 (2d ed. 1965). However, the cases cited in support of these statements by the commentators do not actually provide such support because their facts take them outside the general rule of non-assignability. Both texts rely on the decision in *Hartford-Empire Co. v. Demuth Glass Works, Inc.,* 19 F.Supp. 626 (E.D.N.Y. 1937). The agreement involved in that case specified that the patent license was assignable and its assignability was not an issue. Clearly the statement in the *Hartford-Empire* opinion that the merger conveyed to the new corporation the patent licenses owned by the old corporation results from the fact that the licenses in question were expressly made assignable, not from any general principle that such licenses pass to the resultant corporation where there is a merger. It is also noteworthy that the surviving corporation following the merger in *Hartford-Empire* was the original licensee, whereas in the present case the original licensee was merged into Guardian, which was the survivor. Fletcher also cites *Lightner v. Boston & A. R. Co.,* 1 Low Dec. 338, 15 Fed.Cas. No. 8,343, p. 514 (C.C.Mass. 1869). In that case both of the constituent corporations had been licensed by the patent holder. Thus, the reason for the rule against assignability was not present; the patent holder had selected both as licensees. There was also language in one of the licensing agreements involved in *Lightner*

which indicated to the court that a consolidation was anticipated and that use of the patented mechanism by the consolidated corporation was authorized. Again, this decision does not indicate that the general rule of non-assignability of patent licenses does not apply in merger situations.

■ Guardian relies on two classes of cases where rights of a constituent corporation have been held to pass by merger to the resultant corporation even though such rights are not otherwise assignable or transferable. It points out that the courts have consistently held that "shop rights" do pass in a statutory merger. See *e. g., Papazian v. American Steel & Wire Co.,* 155 F.Supp. 111 (N.D.Ohio 1957); *Neon Signal Devices, Inc. v. Alpha-Claude Neon Corp.,* 54 F.2d 793 (W.D.Pa.1931); *Wilson v. J. G. Wilson Corp.,* 241 F. 494 (E.D.Va.1917). A shop right is an implied license which accrues to an employer in cases where an employee has perfected a patentable device while working for the employer. Though the employee is the owner of the patent he is estopped from claiming infringement by the employer. This estoppel arises from the fact that the patent work has been done on the employer's time and that the employer has furnished materials for the experiments and financial backing to the employee.

The rule that prevents an employee-inventor from claiming infringement against a successor to the entire business and good will of his employer is but one feature of the broad doctrine of estoppel which underlies the shop right cases. No element of estoppel exists in the present case. The license rights of Permaglass did not arise by implication. They were bargained for at arms length and the agreement which defines the rights of the parties provides that Permaglass received non-transferable, non-assignable personal licenses. We do not believe that the express prohibition against assignment and transfer in a written instrument may be held ineffective by analogy to a rule based on estoppel in situations where there is no written contract and the rights of the parties have arisen by implication because of their past relationship.

The other group of cases which the district court and Guardian found to be analogous hold that the resultant corporation in a merger succeeds to the rights of the constituent corporations under real estate leases. See, *e. g., Segal v. Greater Valley Terminal Corp.,* 83 N.J.Super. 120, 199 A.2d 48 (1964); *Dodier v. St. Louis National Baseball Club,* 361 Mo. 981, 238 S.W.2d 321 (1951); *Pittsburgh Terminal Coal Corp. v. Potts,* 92 Pa.Super. 1 (1927). The most obvious difficulty in drawing an analogy between the lease cases and those concerning patent licenses is that a lease is an interest in real property. As such, it is subject to the deep-rooted policy against restraints on alienation. Applying this policy, courts have construed provisions against assignability in leases strictly and have concluded that they do not prevent the passage of interests by operation of law. *E. g., Segal v. Greater Valley Terminal Corp., supra.* There is no similar policy which is offended by the decision of a patent owner to make a license under his patent personal to the licensee, and non-assignable and non-transferable. In fact the law treats a license as if it contained these restrictions in the absence of express provisions to the contrary.

▮ We conclude that the district court misconceived the intent of the parties to the 1964 agreement. We believe the district court put the burden on the wrong party in stating:

> Because the parties failed to provide that Permaglass' rights under the 1964 license agreement would not pass to the corporation surviving a merger, the Court finds that Guardian succeeded to Permaglass' license pursuant to 8 Del.C. § 259, and Ohio Revised Code §§ 1701.81 and 1701.83.

428 F.Supp. at 796.

The agreement provides with respect to the license which Permaglass granted to PPG that Permaglass reserved "a non-exclusive, non-transferable, royalty-free, world-wide right and license *for the benefit and use of Permaglass.*" (emphasis added). Similarly,

with respect to its own two patents, PPG granted to Permaglass "a non-exclusive, non-transferable, royalty-free right and license . . . ." Further, the agreement provides that both it and the license granted to Permaglass "shall be personal to PERMAGLASS and non-assignable except with the consent of PPG first obtained in writing."

The quoted language from Sections 3, 4 and 9 of the 1964 agreement evinces an intent that only Permaglass was to enjoy the privileges of licensee. If the parties had intended an exception in the event of a merger, it would have been a simple matter to have so provided in the agreement. Guardian contends such an exception is not necessary since it is universally recognized that patent licenses pass from a licensee to the resultant corporation in case of a merger. This does not appear to be the case. In *Packard Instrument Co. v. ANS, Inc.,* 416 F.2d 943 (2d Cir. 1969), a license agreement provided that rights thereunder could not be transferred or assigned "except . . . (b) if the entire ownership and business of ANS is transferred by sale, merger, or consolidation, . . . ." 416 F.2d at 944 n. 1. Similarly, the agreement construed in *Freeman v. Seiberling Rubber Co.,* 72 F.2d 124 (6th Cir. 1934), provided that the license was not assignable except with the entire business and good will of the licensee.[1] We conclude that if the parties had intended an exception in case of a merger to the provisions against assignment and transfer they would have included it in the agreement. It should be noted also that the district court in *Packard, supra,* held that an assignment had taken place when the licensee was merged into another corporation.

▮ The district court also held that the patent licenses in the present case were not transferred because they passed by operation of law from Permaglass to Guardian. This conclusion is based on the theory of continuity which underlies a true merger. However, the theory of continuity relates to the fact that there is no dissolution of the

---

1. The parties to the 1964 agreement included language almost identical to that in *Packard* and *Freeman* in a later license agreement which they executed in 1969. See note 2, *infra.*

constituent corporations and, even though they cease to exist, their essential corporate attributes are vested by operation of law in the surviving or resultant corporation. *Vulcan Materials Co. v. United States,* 446 F.2d 690 (5th Cir.), *cert. denied,* 404 U.S. 942, 92 S.Ct. 279, 30 L.Ed.2d 255 (1971). It does not mean that there is no transfer of particular assets from a constituent corporation to the surviving or resultant one.

The Ohio merger statute provides that following a merger all property of a constituent corporation shall be "deemed to be *transferred* to and vested in the surviving or new corporation without further act or deed, . . . ." (emphasis added). Ohio Revised Code, [former] § 1701.81(A)(4). This indicates that the transfer is by operation of law, not that there is no transfer of assets in a merger situation. The Delaware statute, which was also involved in the Permaglass-Guardian merger, provides that the property of the constituent corporations "shall be vested in the corporation surviving or resulting from such merger or consolidation, . . . ." 8 Del.C. § 259(a). The Third Circuit has construed the "shall be vested" language of the Delaware statute as follows:

> In short, the underlying property of the constituent corporations is *transferred* to the resultant corporation upon the carrying out of the consolidation or merger . . . . *Koppers Coal & Transportation Co. v. United States,* 107 F.2d 706, 708 (3d Cir. 1939). (emphasis added).

In his opinion in *Koppers,* Judge Biggs disposed of arguments very similar to those of Guardian in the present case, based on the theory of continuity. Terming such arguments "metaphysical" he found them completely at odds with the language of the Delaware statute. *Id.* Finally, on this point, the parties themselves provided in the merger agreement that all property of Permaglass "shall be deemed transferred to and shall vest in Guardian without further act or deed. . . ." A transfer is no less a transfer because it takes place by operation of law rather than by a particular act of the parties. The merger was effect-

ed by the parties and the transfer was a result of their act of merging.

Thus, Sections 3, 4 and 9 of the 1964 agreement between PPG and Permaglass show an intent that the licenses held by Permaglass in the eleven patents in suit not be transferable. While this conclusion disposes of the license defense as to all eleven patents, it should be noted that Guardian's claim to licenses under the two patents which originated with PPG is also defeated by Section 11.2 of the 1964 agreement. This section addresses a different concern from that addressed in Sections 3, 4 and 9. The restrictions on transferability and assignability in those sections prevent the patent licenses from becoming the property of third parties. The termination clause, however, provides that Permaglass' license with respect to the two PPG patents will terminate if the ownership of a majority of the voting stock of Permaglass passes from the 1964 stockholders to designated classes of persons, even though the licenses themselves might never have changed hands.

Apparently PPG was willing for Permaglass to continue as licensee under the nine patents even though ownership of its stock might change. These patents originated with Permaglass and so long as Permaglass continued to use the licenses for its own benefit a mere change in ownership of Permaglass stock would not nullify the licenses. Only a transfer or assignment would cause a termination. However, the agreement provides for termination with respect to the two original PPG patents in the event of an indirect takeover of Permaglass by a change in the ownership of a majority of its stock. The fact that PPG sought and obtained a stricter provision with respect to the two patents which it originally owned in no way indicates an intention to permit transfer of licenses under the other nine in case of a merger. None of the eleven licenses was transferable; but two of them, those involving PPG's own development in the field of gas hearth technology, were not to continue even for the benefit of the licensee if it came under the control of a manufacturer of automobiles or a competi-

tor of PPG in the glass industry "other than the present owners" of Permaglass. A consistency among the provisions of the agreement is discernible when the different origins of the various patents are considered.

### III

The second issue in the case does not require detailed consideration. Guardian maintains that it was licensed to use four furnace units which are alleged to infringe the eleven patents in suit. This argument is based on an "Exclusive License Agreement" of February 24, 1969 between PPG and Permaglass which Guardian contends was an "equipment license" rather than a license for processes covered by the various patents. It argues that it was free to operate the four furnace units under either the 1964 or the 1969 agreement. PPG agrees that Guardian succeeded to whatever rights Permaglass had under the 1969 agreement,[2] but maintains that this agreement merely licensed a different group of patents relative to the "air form development," an improved method which had recently been perfected. PPG states that it is not claiming infringement of any of the "air form" patents referred to in the 1969 agreement and that rights which Permaglass acquired under that agreement afford no defense to the present infringement action.

The district court attempted to determine whether the four units operated by Guardian are "licensed furnace units" under the agreement. This involved, among other things, the necessity of trying to decipher the meaning of "and/or" as used by the parties—always a nettlesome task. However, if PPG's claim that none of the eleven patents in suit is covered by the 1969 agreement is correct, for purposes of this appeal the definition of "licensed furnace units" is immaterial. The district court did hold that the 1969 agreement was not intended to modify the 1964 agreement. This finding is

fully supported by the evidence. It was the 1964 agreement which defined the rights of Permaglass with respect to the eleven patents in suit. We have held that the rights of Permaglass under the 1964 agreement terminated upon its merger into Guardian. Since the 1969 agreement was not intended to modify the 1964 agreement in any way, it cannot afford a defense as a matter of law to the claim of infringement. Though facts may be developed at trial which will require further consideration of this particular defense, the district court was correct in denying dismissal on the basis of the 1969 agreement.

The judgment of the district court is reversed on appeal and affirmed on cross-appeal, and the cause is remanded for further proceedings. Costs are taxed to Guardian.

---

2. It is interesting to note that the 1969 agreement and the license granted to Permaglass thereunder were not assignable by Permaglass "except to a successor to its entire business to which this agreement relates . . .." This is significantly different from the assignability language of the 1964 agreement and indicates clearly that the parties recognized the necessity of including such an exception where they intended to relieve either party from the general provisions of non-assignability.