ELECTRONIC CITATION: 2009 FED App. 0012P (6th Cir.)
File Name: 09b0012p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: RANDALL JOSEPH HAKE and MARY ANN HAKE, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| ELM ROAD DEVELOPMENT CO., et al., | ) | |
| | ) | No. 09-8008 |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BUCKEYE RETIREMENT CO., LLC, LTD., et al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division at Youngstown.
Case No. 04-41352, Adversary No. 08-04020.

Argued: November 4, 2009

Decided and Filed: December 4, 2009

Before: FULTON, McIVOR, and RHODES, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Michael J. Moran, GIBSON & LOWRY, Cuyahoga Falls, Ohio, for Appellants. John R. O'Keefe, Jr., METZ LEWIS LLC, Pittsburgh, Pennsylvania, John M. Steiner, LEECH, TISHMAN, FUSCALDO & LAMPL, Pittsburgh, Pennsylvania, for Appellees. **ON BRIEF:**

Michael J. Moran, GIBSON & LOWRY, Cuyahoga Falls, Ohio, for Appellants. John R. O'Keefe, Jr., METZ LEWIS LLC, Pittsburgh, Pennsylvania, for Appellees.

---

**OPINION**

---

THOMAS H. FULTON, Chief Bankruptcy Appellate Panel Judge. This is an appeal of the bankruptcy court's granting of summary judgment in favor of Defendants Buckeye Retirement Co., LLC, Ltd. ("Buckeye") and Mark Gleason, Chapter 7 Trustee (the "Chapter 7 Trustee") in the adversary proceeding brought by Plaintiffs Elm Road Development Co. ("Elm Road"), Tuller Brookfield Associates, Inc. ("Tuller"), Woodland Park Retirement Housing Limited Partnership ("Woodland Park"), Daniel Daniluk ("Daniluk") and CI Residential Property Corp. seeking a declaratory judgment that certain property was either not property of the Debtors' bankruptcy estate or prohibited by contract from being assigned or transferred by the Chapter 7 Trustee without the consent of certain parties. The Chapter 7 Trustee had previously moved under 11 U.S.C. § 363 to sell that property, consisting of the Debtor Randall Joseph Hake's ("Hake") 50% interest in Elm Road, 32.5% interest in Tuller, and 100% interest in Randall J. Hake Contracting Corp. ("Hake Contracting") (collectively, the "Carve-Out Assets"). In granting the Defendants' summary judgment and approving the sale of the Carve-Out Assets, the bankruptcy court concluded that the Carve-Out Assets were property of the bankruptcy estate and that Hake's agreement not to sell his interests in Elm Road and Tuller, without obtaining the prior consent of the other shareholders, constituted an unenforceable restraint on alienation of property under Ohio law. The bankruptcy court also concluded that the sale of Hake's interests in Tuller and Hake Contracting would not violate a provision of the partnership agreement of Woodland Park that prohibits transfers of limited partnership interests without general partner consent.

For the reasons stated below, the bankruptcy court's order granting summary judgment in favor of the Appellees is affirmed.

## I. ISSUES ON APPEAL

1.  Did the bankruptcy court err in concluding that Hake's agreement not to sell his interests in Elm Road and Tuller, without obtaining the prior consent of the other

shareholders, constitutes an unenforceable restraint on alienation of property under Ohio law?

2. Did the bankruptcy court err in concluding that the sale of Hake's interests in Tuller and Hake Contracting, themselves holders of limited partnership interests in Woodland Park, would not violate the provision of the Woodland Park partnership agreement that prohibits transfers of limited partnership interests without general partner consent?

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel has jurisdiction to decide this appeal, as authorized by the Northern District of Ohio. 28 U.S.C. §§ 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right. 28 U.S.C. § 158(a)(1). For the purpose of an appeal, a final order is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. U.S.*, 489 U.S. 794, 798; 109 S.Ct. 1494, 1497 (1989). An order granting summary judgment is a final order, as is an order approving the sale of a debtor's assets. *Conley v. Smith (In re Smith)*, 407 B.R. 442(B.A.P. 6th Cir. 2008) (unpub. table)*; Official Committee of Unsecured Creditors v. Anderson Senior Living Prop., LLC (In re Nashville Senior Living, LLC)*, 407 B.R. 222 (B.A.P. 6th Cir. 2009).

The issues raised by this appeal challenge the bankruptcy court's interpretation of Ohio state law and certain contractual provisions. Interpretations of state law and contractual provisions are conclusions of law. *See Lebovitz v. Hagemeyer (In re Lebovitz)*, 360 B.R. 612 (B.A.P. 6th Cir. 2007); *Van Aken v. Van Aken (In re Van Aken)*, 320 B.R. 620, 623 (B.A.P. 6th Cir. 2005).

A bankruptcy court's conclusions of law are reviewed de novo. *LTV Steel Co., Inc. v. Bricker (In re LTV Steel Co., Inc.)*, 560 F.3d 449 (6th Cir. 2009). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Buckeye Check Cashing, Inc. v. Meadows (In re Meadows),* 396 B.R. 485, 488 (B.A.P. 6th Cir. 2008)(internal quotation & citation omitted).

### III.   FACTS

The bankruptcy court based its conclusions on a joint stipulation of facts filed by the parties. The joint stipulation  states as follows:

a. Elm Road is an Ohio S corporation, with Randall Hake and Daniel Daniluk are [sic] each a 50% shareholder.  The sole asset of Elm Road was acquired in a 1031 like-kind exchange from a limited partnership, North River Commons Limited Partnership.  Plaintiffs claim that North River Commons Limited Partnership had written restrictions on transfer if [sic] its partnership interests.  At the time of the incorporation of Elm Road, Daniel Daniluk and Randall J. Hake agreed that they would restrict the transfer, sale or assignment of the stock in Elm Road and require the consent of the other shareholder be obtained prior to any effective transfer of the same.  No writing to that effect has been produced date [sic].

b. Tuller is an Ohio S corporation.  Randall Hake is a 32.5% shareholder in Tuller. Tuller's only asset is a 50% limited partnership interest in Woodland Park Retirement Housing Limited Partnership ("Woodland").  At the time Tuller was formed, Daniel Daniluk, Randall J. Hake, and the other stockholders in Tuller agreed that they would restrict the transfer, sale or assignment of the stock in Tuller and require the consent of Daniel Daniluk or Randall Hake be obtained prior to any effective transfer of the same.  No writing to that effect has been produced to date.

c. The partnership agreement of Woodland and other partnership documents contain restrictions which purport to preclude or limit the sale, transfer, hypothecation or pledge of any limited partnership interest in Woodland without the consent of the general partners of Woodland, which are Plaintiff CI Residential Property Corp. and the Village of McDonald.

d. Randall Hake owns a 100% interest in Hake Contracting.  Among other assets, Hake Contracting owns a 49% limited partnership interest in Woodland.

e. The parties agree that there is no written article of incorporation which expressly restricts the transfer of shares by any shareholders in Elm Road or Tuller.

f. The Plaintiffs have not located or produced any bylaws which expressly restrict the transfer of shares by any of the shareholders of Elm Road or Tuller.

g. Neither the Trustee nor Buckeye has possession of any share certificate pertaining to Elm Road, Tuller or Woodland.

Appellants' Appendix at 247-48.

Section 9.02(a) of the partnership agreement of Woodland Park states as follows:

Under no circumstances will any offer, sale, transfer, assignment, hypothecation or pledge of any Limited Partner Interest be permitted unless the General Partners shall have Consented, except that the Limited Partner may sell, transfer, or assign all or any part of its

Limited Partner Interest to any person related to or any entity affiliated with, or under common control with, the Limited Partner.

Appellants' Appendix at 409.

The Woodland Park partnership agreement defines "Partnership Interest" as follows:

...the ownership interest of a Partner in the Partnership at any particular time, including the right of such Partner to any and all benefits to which such Partner may be entitled as provided in this Agreement and in the Act, together with the obligations of such Partner to comply with all the terms and provisions of this Agreement and of said Act. Such Interest of each Partner shall, except as otherwise specifically provided herein, be that percentage of the aggregate of such benefit or obligation specified by Section 5.01 as such Partner's Percentage Interest.

Appellants' Appendix at 395.

Paragraph 10 of Woodland Park's Certificate of Limited Partnership states as follows:

A limited partner has the right to grant the right to become a limited partner to an assignee of any part of his limited partnership interest, provided all the partners consent. The only terms and conditions imposed on this power are those imposed by the Ohio Revised Code.

Appellants' Appendix at 386.

## IV.   DISCUSSION

The issues raised in this appeal require the Panel to construe Ohio law. Because the Ohio Supreme Court has not addressed the precise issues presented here, the Panel must determine "how that court would rule if it were faced with the issue." *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999). In doing so, the Panel "may use the decisional law of the state's lower courts, other federal courts construing state law, restatements of law, law review commentaries, and other jurisdictions on the 'majority' rule in making its determination." *Id.* (citing *Grantham & Mann v. American Safety Prods.*, 831 F.2d 596, 608 (6th Cir. 1987)).

1.       **Did the bankruptcy court err in concluding that Hake's agreement not to sell his interests in Elm Road and Tuller, without obtaining the prior consent of the other shareholders, constitutes an unenforceable restraint on alienation of property under Ohio law?**

Ohio law generally disfavors restraints on alienation and requires that they be "reasonable" and construed in the manner "which most favors free alienability and the right to convey." *First Fed. Sav. & Loan Ass'n of Toledo v. Perry's Landing, Inc.*, 463 N.E.2d 636, 644 (Ohio Ct. App. 1983)(citations omitted). To this end, Ohio precedent distinguishes between stock transfer restrictions giving other shareholders a right of first refusal, and stock transfer restrictions that essentially give other shareholders a right to veto the transfer. The former is considered a permissible "temporary" restriction and the latter an impermissible "permanent" restriction. *First Nat. Bank of Canton v. Shanks,*, 73 N.E.2d 93, 94-95 (Ohio Com. Pl. 1945) (notably citing cases from other jurisdictions that found absolute consent requirements similar to those at issue here unenforceable). *See also Nicholson v. Franklin Brewing Co.*, 91 N.E. 991 (Ohio 1910) (finding a restriction in form of 30 day option to find other buyers for stock was not an attempt to prevent the alienation of stock in that it did not impose a permanent impediment to transfer). In the instant case, Hake's agreement not to sell his interests in Elm Road and Tuller, without obtaining the prior consent of the other shareholders, gives those shareholders an absolute power to veto the transfers.

Appellants assert that the bankruptcy court erred in light of Ohio public policy generally favoring freedom of contract. They argue that the policy is embodied in Ohio statutes that expressly permit limited partnerships, limited liability companies and close corporations to adopt transfer restrictions such as those at issue here. They also cite to and rely upon Ohio caselaw considering enforceability of a spendthrift trust, *Scott v. Bank One Trust Co., N.A.*, 577 N.E.2d 1077 (Ohio 1991), and housing cooperative transfer restrictions, *Kohler v. Snow Village, Inc.*, 475 N.E.2d 1298 (Ohio Ct. App. 1984), as demonstrating Ohio's strong policy interest favor of freedom of contract.

That policy, however, must be balanced against the public policy against restraints on alienation of property. Although not expressly stated as such, the Ohio courts in *Shanks* and *Nicholson* appear to have struck a balance between the competing policies by permitting stock transfer restrictions that might delay the transfers, but not consent requirements that give a third-party the power to prevent the transfer entirely.

Appellants also attempt to argue that the stock transfer restrictions here are not absolute because there have been prior instances in which consent has been given, and the shareholders are under an implied duty to give, or withhold, their consent in good faith. Conceptually, neither prior instances of consent, nor a duty to exercise the veto power in good faith, serve to transform the transfer restriction here from "permanent" to "temporary." A right of first refusal simply affects the timing of the stock transfer, not whether the transfer will take place. Requiring consent of other shareholders remains a "yes or no" decision even if consent was given to prior proposed transfers, and even if there is a requirement that the decision not be made arbitrarily or maliciously. We conclude, therefore, that the Ohio Supreme Court would determine the stock transfer restriction at issue here an unenforceable restraint on alienation.

2. **Did the bankruptcy court err in concluding that the sale of Hake's interests in Tuller and Hake Contracting, themselves holders of limited partnership interests in Woodland Park, would not violate the provision of the Woodland Park partnership agreement that prohibits transfers of limited partnership interests without general partner consent?**

The Woodland Park partnership agreement expressly requires partner consent for transfers of Woodland Park partnership interests but is silent as to transfers of ownership interests in the entities that are holders of Woodland Park partnership interests (which we will refer to as "upstream" entities). A split in authority exists as to whether the transfer of upstream ownership interests amounts to a transfer of the downstream partnership interest requiring consent. The majority of courts find that such transfers do not require consent. Under this "majority view," transfer restrictions must expressly state that they apply to upstream entities. *See, e.g., United States Cellular Inv. Co. of Los Angeles, Inc. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 935 (9th Cir. 2002); *Ne. Commc'ns of Wis., Inc. v. CenturyTel, Inc.*, 516 F.3d 608 (7th Cir. 2008); and *Engel v. Teleprompter Corp.*, 703 F.2d 127, 134-35 (5th Cir. 1983). Silence on the issue is presumed to indicate an intention by the parties not to restrict transfer of ownership of upstream entities. *Id*. This approach stems at least partly from the public policy disfavoring restraints on alienation and requiring strict construction of the same. *See Engel,* 703 F.2d at 134-35. Given Ohio's strong policy disfavoring restraints on alienation, the Panel believes that the "majority view" should guide its analysis of the partnership agreement at issue in this appeal.

Appellants urge the Panel to adopt the so-called "minority view," citing three representative cases, *Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon Ltd. P'ship*, 840 F. Supp. 770 (D. Oregon 1993), *In re Asian Yard Partners& Asian Yard Venture Corp.*, 1995 WL 1781675 (Bankr. D. Del. 1995) and *Nicolas M. Salgo Assoc. v. Continental Ill. Props.*, 532 F. Supp. 279 (D. D.C. 1981). The Panel is not persuaded by these cases.

In *Oregon RSA No. 6, Inc.*, the court enforced a transfer restriction against an "upstream" entity, in part, after analyzing whether to pierce the corporate veil, and concluding that the limited partner and its parent should be treated as a single entity under Oregon law. The court also found the transfer restriction applicable to the parent under an implied obligation of good faith. *Id.*, 840 F. Supp. at 775-76.

In *Asian Yard Partners*, the court enforced a transfer restriction against the upstream entity based upon the restriction's "broad and specific" language that applied to all transfers "directly or indirectly, or by operation of law or otherwise." *Id.*, 1995 WL 1781675 at *5. There is no such "broad and specific" language present in the partnership agreement at issue here.

The court in *Nicolas M. Salgo Assoc.* considered whether an acquisition by merger of an entity which owned a limited partnership interest constituted a transfer of the underlying limited partnership interest. In finding in the affirmative, the court relied upon the rationale of the Sixth Circuit Court of Appeals in *PPG Indus., Inc. v. Guardian Indus. Corp.*, 597 F.2d 1090 (6th Cir. 1979), which itself is cited by Appellants as indirectly supporting their position. *PPG Industries*, however, addressed the transferability of a patent license. In concluding that a third-party's acquisition by merger of an entity holding a license to use a patent constituted an unauthorized transfer of the license to that third-party, the Sixth Circuit based its decision on the position "long . . . held by federal courts that agreements granting patent licenses are personal and not assignable unless expressly made so." *Id.* at 1093. The Sixth Circuit found that the parties had not expressly agreed that the patent license in question could be transferred in any manner and that, therefore, a transfer "by operation of law" was invalid. Most notably for purposes of the instant appeal, the Sixth Circuit contrasted the opposite approach taken with respect to real estate leases, *i.e.* free transferability absent express language to the contrary, noting the "deep-rooted policy against restraints on alienation." *Id.* at 1095.

*Nicolas M. Salgo Assoc.* itself is distinguishable on its facts because the partnership agreement there expressly prohibited "direct or indirect" transfers without prior consent. In this appeal, the partnership agreement is silent as to "indirect" transfers.

In light of the silence of the partnership agreement as to "indirect" transfers, we conclude that the partnership agreement does not restrict the transfer of ownership interests in upstream entities. Therefore, the Woodland Park agreement does not bar the transfer of interests in property held by the debtor, Randall Hake.

## V.   CONCLUSION

For the foregoing reasons, the bankruptcy court's order granting summary judgment in favor of the Appellees is AFFIRMED.