E. H. THORNTON, Jr., Plaintiff-Appellee Cross-Appellant,

v.

BEAN CONTRACTING COMPANY, INC., a/k/a Bean Contracting Corp., Defendant-Appellant Cross-Appellee.

No. 76–3522.

United States Court of Appeals, Fifth Circuit.

April 11, 1979.

Rehearing Denied June 15, 1979.

Grant Cook, James R. Leahy, Houston, Tex., for defendant-appellant cross-appellee.

William L. Burnett, Houston, Tex., for plaintiff-appellee cross-appellant.

Before GEE and VANCE, Circuit Judges, and HUNTER, District Judge.*

EDWIN F. HUNTER, Jr., District Judge:

These consolidated cases involving an alleged breach of a brokerage contract for the sale of certain marine equipment are in a federal forum solely because of diversity. The first suit was filed on March 1, 1974 and sought to recover $137,011.81 as a broker's commission on the negotiated sale price of a hydraulic dredge, Russell B. Long. The second suit was filed on July 24, 1975 to recover $161,560.00 as a broker's commission on the negotiated sale price of the remainder of the marine equipment. The trial court concluded that the contract of sale in its entirety became valid and enforceable on July 1, 1973 and plaintiff's commission was earned as of that date. Judgment was entered for plaintiff on the initial suit. The second cause of action was dismissed because the claims there asserted were barred by the Texas two-year limitation statute.

## I. BACKGROUND FACTS

Plaintiff (Thornton) is the broker. He was an attorney and corporate officer for the seller and prepared the original "Contract of Sale" upon which he seeks a broker's commission. The defendant (Bean) is the successor corporation of the seller, B–R Dreding Company. The other party to the contract of sale was the buyer (Dragados), which is not a party to either suit.

Mr. Radcliff, seller's chief executive officer, participated in discussions with Thornton, culminating in an agreement authorizing Thornton to sell certain specified

* District Judge, Western District of Louisiana, sitting by designation.

vessels and marine equipment located at Puerto Lazaro Cardenas, Mexico. No provision was made at that time concerning the broker's commission. On March 22, 1973, plaintiff mailed a letter to seller containing a proposed fee schedule. The trial court found that no written or oral response to this letter was made, and correctly concluded that seller's failure to respond estopped it from claiming that the commission would be other than the formula set out in the letter. See *Associated Tabulating Service, Inc. v. Olympic Life Ins. Co.,* 414 F.2d 1306 (5th Cir., 1969). Thornton was successful in interesting Dragados, a Mexican corporation, in purchasing the marine equipment. On April 2, the contract of sale was executed, and buyer made the required $80,000 down payment. Further negotiations resulted in the alteration of the original contract by amendment dated April 27, 1973. Thornton signed this amendment in behalf of the seller. One of the dredges, the Russell B. Long, was insured and placed in the possession of the buyer. The Long was refitted and towed to Puerto Madero. On August 1, 1973, the Long sank before it made "entry" into Puerto Madero.[1] Subsequently, the buyer, as a co-insured under the policy, released its claims to the insurance proceeds, which were, in effect, paid to the seller. On August 8, 1973, and several dates thereafter, buyer and seller amended the contract to extend the time for consummation of the sale. On October 19, 1973, buyer gave seller notice of termination.

## II. APPLICABLE LAW

Texas law is controlling in this diversity action. In the absence of contractual terms providing otherwise, a broker earns his commission by procuring from the purchaser a valid, enforceable contract of sale. According to Texas precedent, a broker may earn his commission by procuring from the purchaser a valid, enforceable con-

tract of sale, and the right to recovery is not affected by the subsequent refusal or inability of the parties to complete the transaction. *Leonard Duckworth, Inc. v. Michael L. Field & Company,* 516 F.2d 952, 958 (5th Cir. 1975); *Elmen v. Winnfield,* 80 S.W.2d 343 (Tex.Civ.App.1935); *Miller v. Carlson,* 390 S.W.2d 64 (Tex.Civ.App.1965); *Nugent v. Scharff,* 476 S.W.2d 414 (Tex.Civ. App.1971).

The central issue of this case is the enforceability of the April 2nd contract, as amended on April 27th.[2]

## III. THE CONTRACT

Two provisions of the contract are determinative of the issue of enforceability. Paragraph 2 provides:

"2. The total sum of $2,600,000.00 U. S. currency, which is the sum of the stated per unit price set out on Exhibit "A", payable in Harris County, Texas, United States of America, as follows:

\* \* \* \* \* \*

b) On or before the later of the following periods:

(i) on or before ten (10) days from date hereof, or

(ii) if within the time hereinafter provided Buyer decides to mobilize one of the dredges to Puerto Madero, Mexico, then on or before the tenth day after said dredge enters (as such term is hereinafter defined) the lagoon or bay contiguous to the Pacific Ocean at Puerto Madero, Mexico,

\* \* \* , Seller agrees to assist Buyer in obtaining a loan in the United States in the amount of $1,820,000.00 at an annual interest rate not to exceed 8½%, payable in installments not more often than quarter-annually and with principal payment requirements to be in equal annual installments over a period of not less than five (5) years.

1. Entry into said bay or lagoon will be considered accomplished when:

The dredge is totally within the land area and the stern of the dredge has reached a point that prior to dredging was the shore line at zero (0) feet mean sea level.

2. The district judge emphasized the problem. Addressing counsel at the conclusion of their arguments, he noted,

"Gentlemen, the key word is 'enforceable.' That's what this whole law suit is about \* \* ."

* * *

If dredge is unable to make such entry for any reason other than tide or weather conditions, this sale shall, nevertheless, be consummated within ten (10) days after such inability has been determined.

Paragraph 5 of the Contract of Sale contains the following pertinent language:

RIGHTS OF TERMINATION:

a) Seller may terminate this Contract within thirty (30) days from the date hereof, if: * * *

(2) it is unable to obtain for Buyer the financing referred to in Paragraphs 2 and 4 hereof. (emphasis added)

b) Buyer may terminate this contract: * * *

(2) *if within sixty (60) days from the date hereof,* Seller has been unable to obtain for Buyer the financing referred to in Paragraph 2.b) and 4.k) hereof * * *. (emphasis added)

* * * * * *

c) If this contract is terminated, as afore provided, the property shall be delivered to Seller at the place where the same is located at time of such termination and except as otherwise provided in Paragraph 6.f) hereof, neither party shall have any liability to the other.

## IV. DISTRICT COURT FINDINGS

The district judge, in his oral findings, stated:

"The termination rights of the contract purchaser remained viable until they terminated the matter on October 19, 1973."

He later retracted that finding and made a written finding:

"After a careful review of the contract (plaintiff's exhibit 1), the court finds that an error was committed in the oral fact finding. The court stated that 'the termination rights of the contract purchaser Dragados remained viable until they terminated the matter on October 19, 1973.' However, Article 5 of the contract (Rights of Termination) states that the buyer (Dragados) may terminate this con-

tract if 'within thirty days from the date hereof, seller has been unable to obtain for buyer the financing referred to in paragraph 2b and 4k hereof * * *.' In the amendment to the contract executed April 27, 1973, the words 'thirty days' were stricken and the words 'sixty days' were inserted. Thus, although under Article 2 seller was obligated 'to assist' buyer in obtaining financing, Article 5 limited buyer to 60 days in which it could terminate for this reason."

"Under Article 5 the last rights of termination expired on July 1, 1973. From that date the contract of sale was valid and enforceable between B–R and Dragados, and from that date plaintiff had earned his commission on the negotiated price of the marine equipment."

■ The generally accepted rule is that the interpretation of a contract is a question of law, not fact, and appellate review is not limited to the "clearly erroneous" rule. *First National Bank of Miami v. Insurance Company of North America,* 495 F.2d 519 (5th Cir. 1974); *Makofsky v. Cunningham,* 576 F.2d 1223 (5th Cir. 1978). An exception to this rule is the situation in which extrinsic evidence has been used in interpreting an ambiguous contract. See *Valley Cement Industries, Inc. v. Midco Equipment Co.,* 570 F.2d 1241 (5th Cir. 1978); *Makofsky, supra.*

■ We need not reproduce here all of the facts adduced by plaintiff as probative of the existence of the oral contract from which his asserted right to a broker's commission derives. It suffices to say that we agree with the trial court that the oral contract existed and that the commission was to be as set forth in the letter of March 22, 1973. We agree, too, with the trial court's finding that the broker's fee was not contingent on the closing of the sale, but was to become fully earned when he procured a buyer, and seller and buyer signed a valid and enforceable contract. When would the original contract have become enforceable? The answer: it would have become enforceable when the parties no longer possessed a right to terminate.

The disputed termination provision may be ambiguous when read by itself, but when the contract is read as a whole it is amenable to only one reasonable construction. The trial court's finding that "the last rights of termination expired on July 1, 1973," is clearly erroneous. It did not involve credibility choices and cannot be squared with the language of the contract of sale. Paragraph 5 is precise. The seller could exercise his right to terminate

> "within sixty days from the date hereof, if Seller were unable to obtain financing referred to in paragraphs 2 and 4 of the Contract."

The buyer, on the other hand, could

> "terminate this contract * * * if within sixty (60) days from the date hereof, Seller has been unable to obtain for Buyer the financing * * *."

Clearly, the buyer could terminate at any time after the sixty-day period allotted to the seller to obtain financing had expired *and* prior to the time when the payment provided for in paragraph 2.b) became due or vested.

Paragraph 2 provides that the total consideration is "payable" ten days after the dredge mobilized by buyer enters the lagoon or bay contiguous to Puerto Madero, Mexico, or ten days after the inability of said dredge to make entry has been determined, whichever is later. The dredge did not "enter" the lagoon or bay. On August 1, 1973, the dredge Russell B. Long sank while in the possession of Dragados. The sinking triggered that section of paragraph 2 of the contract which reads:

> "If the dredge is unable to make such entry for any reason other than tide or weather conditions, this sale shall, nevertheless, be consummated within ten (10) days after such inability has been determined."

All parties were notified of the inability of the dredge to make entry. The right of the buyer to terminate would have expired on August 11, 1973,[4] but this was not to be because prior to the payment provided for in paragraph 2.b) became due, the parties to the contract of sale executed a series of extensions of the time period set forth in that paragraph. Plaintiff cites *Leonard Duckworth v. Michael L. Field and Company,* 516 F.2d 952 (5th Cir. 1975); *Davidson v. Suber,* 553 S.W.2d 430; and *Cheatwood v. De Los Santos,* 561 S.W.2d 273 (Tex.Civ. App.-Eastland 1978, no writ) as authority for the proposition that, absent specific contractual language making the broker's commission contingent upon actual closing, the broker's commission is earned upon the procuring of a valid, enforceable contract of sale. We have no quarrel with these authorities, but in each of these cases the respective courts dealt with rights arising out of "enforceable" contracts. They are neither controlling nor persuasive on the issue of enforceability of the contract before the court in the instant case.

There is no question that the parties to the agreement considered that the agreement itself was not enforceable at the time it was executed. We reiterate that the buyer had the right to terminate the contract at any time after the sixty (60) day period allotted to the seller to obtain financing (paragraph 5) had expired *and* prior to the time when the payment provided for in paragraph 2.b) fell due or became vested. Prior to the payment provided for in paragraph 2.b) becoming due or vested, the parties executed a series of extensions of the time periods set forth in that paragraph. On October 19, 1973, within the time period established by the final extension, Dragados exercised its right of termination. The right of the buyer to terminate was exercised within a reasonable time. The buyer and seller simply postponed the enforceability of the contract—a thing within their power to do. It is much the same as if they had simply called off the

---

4. August 11th was the tenth day after the inability of the Russell B. Long to enter the lagoon had been determined.

contract on August 8th—a thing which was in their power to do without the concurrence of the broker. We find ourselves in complete agreement with the initial and correct finding of the district court:

"The termination rights of the contract purchaser remained viable until they terminated the matter on October 19, 1973."

Crucial to this finding is our conclusion that the parties could postpone enforceability of the contract in such a manner as to prevent the accrual of a commission, so long as they did not do so with any intent to commit fraud on the broker's rights, of which there is not even the slightest indication.

There remains the suggestion that the right of the buyer to terminate the contract within a reasonable time expired before the buyer undertook to exercise that right on October 19th. Considering the circumstances involved in this litigation, we find that the time (until October 19th) was not unreasonable.

## THE FIRST SUIT

The initial action of March 1, 1974 seeks to recover $137,011.81 as a commission on the negotiated sale price of the dredge Long. The sinking of the Long on August 1st triggered paragraph 6(a),[5] which provided that the total contract purchase price was to be reduced by the contractually stated value of the lost or destroyed property. After August 1st, the contract of sale did not include this dredge. Upon its destruction, the destroyed dredge simply drops out of the contract. There was no enforceable contract on August 1st because the termination rights of the contract purchaser remained viable until the purchaser terminated the matter on October 19, 1973. The judgment for plaintiff for a brokerage commission on the negotiated sale price of the Russell B. Long must be REVERSED. It is.

## THE SECOND SUIT

This suit was filed on July 24, 1975, and seeks recovery of $161,560 as a broker's commission on the negotiated sale price of the remainder of the equipment. Predicated on its finding that the contract became enforceable on July 1, 1973, the trial court dismissed on the basis of the Texas two-year limitation statute. Based on our conclusion that the purchaser's right to terminate remained viable through October 19, 1973, it necessarily follows that the limitation statute is not applicable. But, because the seller never had an enforceable contract, the plaintiff (broker) never became entitled to his commission, and the judgment for the defendant in the second suit must be AFFIRMED. It is.

REVERSED in part; AFFIRMED in part.

---

5. "6(a). Notwithstanding any provision in this Contract to the contrary, in the event of loss or destruction (actual or constructive) of any of the property prior to the date that the title thereof is vested in Buyer, the amount of the total purchase price payable for all of the property, as herein provided, shall be reduced by the amount of the stated purchase price of said lost or destroyed property as shown on Exhibit 'A' * * *."