### In re MARTIN EXPLORATION COMPANY, Debtor.

Civ. A. No. 86–5139.

United States District Court,
E.D. Louisiana.

Sept. 10, 1987.

Simon, Peragine, Smith and Redfearn, Judy Perry Martinez, Robert L. Redfearn, New Orleans, La., for Martin Exploration Co.

Lemle, Kelleher, Kohlmeyer and Matthews, Joseph N. Mole, New Orleans, La., Bronfin, Heller, Steinberg and Berins, Edward M. Heller, Jan M. Hayden, New Orleans, La., for Petrostar Corp.

Jones, Walker, Waechter, Poitevent, Carrere and Denegre, R. Patrick Vance, New Orleans, La., for Wells Fargo Bank, N.A. as successor in interest.

WICKER, District Judge.

This is an appeal from the decision of the Bankruptcy Court of the Eastern District of Louisiana, T.M. Brahney, Judge. The debtor ["Martin"] had filed an adversary proceeding seeking damages from Petrostar Corporation ["Petrostar"]. Allegedly Martin had lost its working interest in mineral leases because Petrostar had breached a drilling contract it had with Martin.

After trial, the Bankruptcy court found that Petrostar had breached its drilling contract with Martin, that Martin had shortly thereafter rejected that contract, but that no damages had been sustained by Martin in the time between Petrostar's breach and Martin's rejection of the drilling contract. Both parties appealed.

Upon review and for the following reasons, the bankruptcy court's decision is REVERSED IN PART and AFFIRMED IN PART.

The events preceding this lawsuit were as follow:

Martin held rights to mineral interests in Comite Field East Baton Rouge Parish. On June 11, 1982, Martin contracted with Petrostar to complete the Comite Field unit well (Pettit No. 1) for a fixed day rate and costs. Petrostar moved its drilling rig on the well site on June 15, and June 16, 1982. At the end of June, 1982, Petrostar submitted to Martin an invoice for $136,416.46 for the period from June 15, to June 30, 1982. The invoice was received by Martin on July 14, 1982, and was not paid.

Martin filed its petition for Chapter 11 relief under the Bankruptcy Code on July 16, 1982. On July 19, 1982, Petrostar notified Martin that it was stopping work at Pettit No. 1 because Martin had not paid the June 30th invoice and Martin had filed for Chapter 11 relief. Martin countered that Petrostar's work stoppage would violate the drilling contract and the automatic stay provisions of 11 U.S.C. § 362(a). Martin demanded in writing that Petrostar continue drilling. Petrostar finished rigging down its Pettit No. 1 drilling operation on July 21, 1982.

Shortly thereafter Petrostar told Martin that it would resume drilling at Pettit No. 1, if it could be sure of being paid. Petrostar sent two more invoices for work performed in July, 1982, both of which were not paid. Each of the parties then claimed the other had breached the drilling contract. On August 5, 1982, Martin's counsel wrote Petrostar's counsel:

> I am advised that they [Martin] will probably want to continue the project at sometime in the future, but it will not be within the next few weeks. There is, therefore, no reason for your client to hold a rig on standby for the job. D. Ex. 7.

Being unable to hire another drilling contractor because of its distressed financial condition, Martin entered into a farmout agreement, under which it forfeited its working interest in the leases and retained a less valuable overriding royalty interest. The bankruptcy court authorized the farmout agreement on October 5, 1982. Adversary No. 82–0324 at p. 8.

Trial of this adversary proceeding [No. 84–0087] was held before the bankruptcy court on November 6, 1984.

After admitting parol evidence on the intent of the parties to the Daywork Drilling contract, Judge Brahney found ¶¶ 5.1 and 5.2 set forth a payment term of ninety days. Because he interpreted ¶¶ 5.1 and 5.2 as providing a term for payment, he then found that, under La. C.C. arts. 2048, 2052, and 2053 (West 1977),[1] Petrostar could not demand payment of the invoice it had submitted for work done in June before ninety days had expired from the day that the invoice had been submitted to Martin for payment. Additionally, Judge Brahney found that Petrostar could not invoke the doctrine of anticipatory breach of contract because of Martin's insolvency. Therefore the bankruptcy judge found that Petrostar had breached the Daywork Drilling Contract by shutting down the operation and withdrawing from the well site. Having so concluded, however, Judge Brahney found as a matter of fact that Petrostar remained willing to renew drilling if Martin would assure proper payment. Because of Petrostar's willingness to resume drilling, the bankruptcy court found that Martin's letter of August 5, 1982, telling Petrostar that it did not have to hold a rig on standby and Martin's execution of the farmout agreement constituted a rejection of the Petrostar contract. Judge Brahney at the conclusion of the liability

---

1. La. C.C. art. 2048 (West 1977) states: "The time given or limited for the performance of an obligation, is called its term."

La. C.C. art. 2052 (West 1977) provides: "What is due only at a certain time, can not be demanded before the expiration of the intermediate time; but what has been paid in advance can not be redemanded."

La. C.C. art. 2053 (West 1977) reads: "The term is always presumed to be stipulated in favor of the debtor, unless it results from the stipulation, or from circumstances, that it was also agreed upon in favor of the creditor."

portion of the adversary proceeding decided that no trial was needed on the issue of damages. Although damages were theoretically owed Martin from July 19, 1982 to August 5, 1982, Judge Brahney said that no damages were sustained by Martin during that time period. He based this conclusion on the record, and specifically on one answer to interrogatories filed into the record by Martin. D-3, ¶ 3.

Martin appeals the bankruptcy court's finding that no damages were owed. Petrostar filed a cross appeal asserting that it did not breach the Daywork Drilling Contract and that the bankruptcy court erred in denying its pretrial motion for summary judgment. The Court will examine Petrostar's argument first. If Petrostar did not breach the Daywork Drilling Contract, a consideration of damages owed Martin is forestalled.

The outset question of whether Petrostar breached the Daywork Drilling Contract requires an interpretation of that very contract.

> The generally accepted rule is that the interpretation of a contract is a question of law, not fact, and appellate review is not limited to the "clearly erroneous rule." [Citations omitted.] An exception to this rule is the situation in which extrinsic evidence has been used in interpreting an ambiguous contract. *Thornton v. Bean Contracting Co.*, 592 F.2d 1287 (5th Cir.1980) *Paragon Resources v. Nat. Fuel Gas Distribution*, 695 F.2d 991, 995 (5th Cir.1983).

■ In this case, the bankruptcy judge treated the contract as if it were ambiguous and admitted testimonial evidence on its meaning. On the one hand, if the bankruptcy court were correct in finding the contract was ambiguous and properly admitted extrinsic evidence, the interpretation of that contract is a question of fact and this court must apply the clearly erroneous standard.[2] On the other hand, if the bankruptcy court were wrong in finding the

contract ambiguous then its interpretation presents a question of law to which the clearly erroneous standard does not apply.

"[T]he determination of whether a contract is ambiguous in order to permit extrinsic evidence of intent, is a question of law." *In Re Stratford of Texas, Inc.*, 635 F.2d 365 (5th Cir.1981). See also, *Eaton v. Courtaulds of North America, Inc.*, 578 F.2d 87 (5th Cir.1978). An earlier decision of the Fifth Circuit explained the reason why the outset determination of a contract's ambiguity is a question of law.

> Since this Court is in as good position to interpret the ... written contract as was the district court, we cannot rely upon the clearly erroneous rule, but must ourselves construe the contract without any presumption in favor of the judgment of the district court. *Illinois Central Railroad Co. v. Gulf, Mobile & Ohio Railroad Co.*, 308 F.2d 374, 375 (5th Cir. 1962).

¶¶ 5.1 and 5.2 of the Daywork Drilling Contract provide:

> 5.1 Payment for mobilization, drilling and other work performed at applicable day rates, and all other applicable charges *shall be due* upon acceptance by Operator of the work performed in accordance with this Contract, *upon presentation of invoice* therefor upon completion of mobilization, completion of the well, or *at the end of the month in which such work was performed* or other charges are incurred, whichever shall first occur.
> 5.2 Any sum or sums not paid within 90 days after the date of invoice shall bear interest at the rate of 1½ percent per month or the maximum legal rate, whichever is less, from such date until paid. [Emphasis supplied.]

As a matter of law, this Court finds the payment provision in the Daywork Drilling Contract clear and unambiguous. Had this contract been so viewed by the bankruptcy

---

**2.** Bankruptcy Rule 8013 provides in part:
On appeal the district court ... may affirm, modify, or reverse a bankruptcy court's judgment, order or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the

opportunity of the bankruptcy court to judge the credibility of the witnesses.
The Advisory Committee Note states that "This rule accords to the findings of a bankruptcy judge the same weight given the findings of a district judge under Rule 52 F.R.Civ.P."

court, there would have been no need for parol evidence at trial on the intent of the parties to the contract. Accordingly, this Court finds that it is not bound by the clearly erroneous standard of review in this appeal.

 Under ¶ 5.1 of the contract, Martin was to pay the invoice when presented at the end of the month in which such work was performed. Martin did not do so. Accordingly Martin breached the Daywork Drilling Contract by not paying the invoices when presented. ¶ 5.2 of the Daywork Drilling Contract was not an extension of time within which to pay. ¶ 5.2's reference to "sums not paid within 90 days" merely forestalls any attachment of interest for failure to pay as set out in ¶ 5.1. ¶ 5.2 was a penalty provision which added interest to the balance due, if payment was not made within ninety (90) days.

The Louisiana codal articles relied upon by the bankruptcy court judge do not apply to the Daywork Drilling Contract at issue in this litigation. The applicable provision in effect at the time this contract was confected was La. C.C. art. 1945(3) (West 1977): "[The] intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences."

¶ 5.1 clearly states that the amount of the invoice is due immediately upon presentation of the invoice. ¶ 5.2 states that if the amount of the invoice has not been paid within ninety days, an additional interest charge may be assessed. Even were ¶ 5.1 "susceptible of two interpretations, it must be understood in that in which it may have some effect, rather than in a sense which would render it nugatory." La. C.C. art. 1951 (West 1977). The bankruptcy court's interpretation of ¶ 5.2 assumes that the principal amount of the invoice is not due until the penalty charges are also due. This reads ¶ 5.1 out of the contract.

The bankruptcy court erred in finding that Martin had ninety (90) days within which to pay the July 14, 1982, invoice. Because Martin did not pay the invoice of July 14, 1982, 1982, it was in breach of the Daywork Drilling contract before Petrostar removed its equipment from the well site on July 19, 1982. Consequently Petrostar owes Martin no damages as a result of its leaving the well site.

Accordingly, the Bankruptcy court is REVERSED insofar as it found that Petrostar had breached and that Martin had not breached the Daywork Drilling Contract; the Bankruptcy court is AFFIRMED insofar as it found that Petrostar owed no damages to Martin.