# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 06-2891

NORTHEAST COMMUNICATIONS OF WISCONSIN, INC.,

*Plaintiff-Appellant,*

*v.*

CENTURYTEL, INC., and ALLTEL CORP.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05-C-690—**William C. Griesbach**, *Judge.*

ARGUED SEPTEMBER 13, 2007—DECIDED FEBRUARY 19, 2008

Before EASTERBROOK, *Chief Judge*, and CUDAHY and SYKES, *Circuit Judges.*

EASTERBROOK, *Chief Judge.* This litigation under the diversity jurisdiction, which is governed by Wisconsin law, presents the question whether a corporate merger involving the parent of one member of a limited partnership activated a right of first refusal. The district judge gave a negative answer and entered judgment for the member, which wants to retain its interest. 2006 U.S. Dist. LEXIS 38562 (E.D. Wis. June 8, 2006).

The partnership is Wisconsin RSA #10 L.P. (the Partnership), formed in 1989 as a joint venture among five firms

that wanted to enter Wisconsin's nascent cellular communications market. The Partnership offers service in Door, Kewaunee, and Manitowoc Counties. The five original members were Casco Telephone, Universal Cellular, Northeast Communications, Lakefield Communications, and Wayside Telecom. (KDM Cell, Inc., owned by four of these five, serves as managing partner.) Three clauses of the agreement create rights of first refusal. Section 11.1 says that, before any member may sell its stake, any of the other members can step in to acquire that interest. Sections 11.3 and 11.5 qualify this rule by allowing subsets of the members to transfer interests among themselves: §11.3 says that Northeast may sell to Wayside, or the reverse, without conferring a right of first refusal on the other three members, and §11.5 deals with transactions among Casco, Universal, and Lakefield. Here is the text of §11.5:

> Any provision of Section 11.1 to the contrary notwithstanding, it is understood and agreed that CASCO TELEPHONE COMPANY, UNIVERSAL CELLULAR . . . and LAKEFIELD COMMUNICATIONS, INC. may transfer their respective partnership interest to one of their respective affiliates at any time without consent or restriction from any other partner. In the event of any sale, transfer, or other disposition of ownership or control by CASCO TELEPHONE COMPANY, UNIVERSAL CELLULAR . . . or LAKEFIELD COMMUNICATIONS, INC. of their respective Partnership Interest, the non-selling entity, or affiliate of the non-selling entity, shall have, to the exclusion of all other partners, exclusive right for a period of thirty (30) days from the date of receiving notice from the selling partner of its interest to sell part or all Partnership Interest, the right to purchase the interest of the selling partner or a portion of

said interest. The price that such partner shall pay for the selling partner's interest shall be equal to the price offered by any third party desiring to purchase the interest of the selling partner or 100% of the fair market value of such interest, whichever is the lesser of the two figures. If the buying or selling partners cannot agree as to a fair market value for the Partnership Interest being sold, the fair market value shall be determined to be equal to the average value arrived at by three (3) independent appraisers, one chosen by the selling partner, one chosen by the purchasing partner or partners, and the third chosen by the other two appraisers selected by the partners. In determining the fair market value of the Partnership Interest being sold, the appraisers shall make such determination independent of and not considering the third party offer which may have necessitated the appraisals. All appraisers shall be chosen within thirty (30) days of the date of the event necessitating an appraisal and such said appraisers are to have their appraisal presented within thirty (30) days of their selection as appraisers. Any interest not so purchased by CASCO TELE-PHONE COMPANY, UNIVERSAL CELLULAR . . . or LAKEFIELD COMMUNICATIONS, INC., or their respective affiliates, from the other or others at the termination of the 30-day period, shall be subject to purchase by any of the other partners. It is the intention of the parties that this paragraph shall apply only to sales by CASCO TELE-PHONE COMPANY, UNIVERSAL CELLULAR . . . or LAKEFIELD COMMUNICATIONS, INC., or their affiliates to each other, or their affiliates, so as to give each of these entities the first right and option to purchase additional interests in the Partnership.

Universal Cellular has many subsidiaries; the one participating in this partnership was "Universal Cellular for Wisconsin RSA #10, Inc.", but for simplicity we have shortened the name. Universal Cellular also has a parent, CenturyTel Wireless, Inc., and the acquisition of this parent in 2002 by Alltel Corp. is what led to the current dispute. A reader of §11.5 might be surprised to learn that the acquisition of a parent corporation could matter to rights of first refusal such as §11.1, §11.3, or §11.5. But a state court has held that transfer of control at the level of a corporate parent can activate §11.3, see *Wayside Cellular, Inc. v. Northeast Communications of Wisconsin, Inc.*, 192 Wis. 2d 765, 532 N.W.2d 470 (Wis. App. 1995), and the parties have assumed that this conclusion applies to §11.5 as well—though they agree that it does *not* apply to §11.1, a limitation that will become significant in a moment.

When Alltel (itself since acquired by TPG, Inc.) acquired CenturyTel, Northeast tried to scoop up Universal Cellular's ownership interest in the Partnership. Universal protested that §11.1 does not confer that option on Northeast, because it applies only when a member proposes to sell its interest, which Universal had not done. Northeast agreed with this reading of §11.1. Still, Northeast insisted, the acquisition of Universal Cellular's parent activated §11.5. Casco is no longer a member; its interest was divided among Universal and Lakefield some years back. As Northeast sees things, when Lakefield did not buy out Universal's interest, the penultimate sentence of §11.5 came into play: "Any interest not so purchased [by Lakefield within 30 days] . . . shall be subject to purchase by any of the other partners."

Universal thinks that making an interest "subject to purchase" just plops it back into the domain of §11.1, which, everyone agrees, is irrelevant when a member is acquired by merger or tender offer. Universal maintains

that using the "subject to purchase" language to give Northeast a right of first refusal would expand the limited scope of §11.1 and disregard the difference, which Wisconsin's Court of Appeals perceived, between the scope of §11.1 and the other two first-refusal clauses. Universal views §11.5 as curtailing rather than expanding the scope of §11.1. Northeast, for its part, contends that the "subject to purchase" language gives it an option on top of its rights under §11.1.

The district judge relied principally on the last sentence of §11.5: "It is the intention of the parties that this paragraph shall apply only to sales by CASCO TELE-PHONE COMPANY, UNIVERSAL CELLULAR . . . or LAKEFIELD COMMUNICATIONS, INC., or their affiliates *to each other*, or their affiliates, so as to give each of these entities the first right and option to purchase additional interests in the Partnership." (Emphasis added.) Universal did not sell its membership to Lakefield, nor was CenturyTel acquired by Lakefield. Because none of the three members listed in §11.5 transferred any asset to any other member specified in §11.5, this paragraph drops out (the district judge held) and leaves only §11.1—which, to repeat, everyone agrees does not afford Northeast a right of first refusal.

Northeast maintains that the district court's reading frustrates a major purpose of clauses such as §11.5: to give the original partners a right to keep strangers out of their business ventures. See *Bruns v. Rennebohm Drug Stores, Inc.*, 151 Wis. 2d 88, 442 N.W.2d 591 (Wis. App. 1989). Yet how does a change in its ownership structure make Universal Cellular a "stranger" to the Partnership? True, a new (indirect) owner may give Universal new marching orders, but so may a new CEO of a partner that has no corporate parent, and a change of CEO (or a new business plan adopted by an old CEO) does not give other partners a buyout right. Northeast's understanding of the

reason why clauses such as §11.5 are included in joint-venture agreements does more to call into question the state court's decision in *Wayside Cellular*, which extends §11.3 (and implicitly §11.5) to transactions involving corporate parents, than to undermine the district court's decision in this case. But no matter. A contract's express language beats imputed purposes under Wisconsin's law. See *Gorton v. Hostak, Henzl & Bichler, S.C.*, 217 Wis. 2d 493, 506, 577 N.W.2d 617, 622–23 (1998). If Universal were to offer its interest to a stranger, then §11.1 *would* grant Northeast a right of first refusal; that saves the district court's reading from any risk that it has sabotaged the main function of a first-refusal clause.

At oral argument counsel for Northeast asserted that parol evidence supports its reading of §11.5. Northeast's brief, however, makes no such argument. What it says instead is that §11.5 is ambiguous and therefore must be construed by a jury rather than a judge. That is not, however, a rule of federal law (for it is the forum's law that controls the allocation of tasks between judge and jury, see *Mayer v. Gary Partners & Co.*, 29 F.3d 330 (7th Cir. 1994)). Ambiguity in a contract permits resort to parol evidence—whether usages of trade or exchanges between the contracting parties. See, e.g., *Utica Mutual Insurance Co. v. Vigo Coal Co.*, 383 F.3d 707 (7th Cir. 2004) (Indiana law). When only the contract's language is in evidence, however, a court renders its own decision whether or not the document is ambiguous. See, e.g., *Continental Casualty Co. v. Northwestern National Insurance Co.*, 427 F.3d 1038 (7th Cir. 2005); *Compagnie Financière de CIC et de l'Union Européenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 158 (2d Cir. 2000); *Thornton v. Bean Contracting Co.*, 592 F.2d 1287, 1290 (5th Cir. 1975). So although we do not think the last sentence of §11.5 hard to parse, if it were the

court still would be required to select the most plausible meaning.

The reading that the district judge has given, which treats §11.5 as a qualification rather than an extension of §11.1, has much to commend it. For example, §11.5 bears the caption: "Right of Limitation of Transfer and Right of First Refusal among Casco [ ], Universal Cellular [ ] and Lakefield [ ]." This tells us that §11.1 is about to be confined rather than expanded. What's more, the district judge's understanding of §11.5 curtails the members' ability to engage in strategic behavior. Usually a right of first refusal comes into play only after the price of an asset has been negotiated in an arms'-length transaction. If Northeast agreed to sell its own stake to AT&T, for example, another member would be entitled to buy that interest at a price than cannot exceed what AT&T had agreed to pay. But when a corporate parent is acquired, no price is attached to a membership interest in Wisconsin RSA #10 L.P. What price then would the interest fetch under a right of first refusal?

There is no liquid market in these interests, and the absence of a market price would necessitate an appraisal under the cumbersome process outlined in §11.5. Appraisals may miss the mark by a substantial margin. Section 11.5, as Northeast reads it, allows any member of the partnership to demand an appraisal as a speculative venture: if the appraisal comes in below the member's own estimate of the interest's value, then the interest will be snapped up; otherwise the original transaction will go through. Most businesses prefer to avoid situations in which their assets can be acquired for less than market value. Indeed, it is hard to understand CenturyTel's defense of this suit on any other ground. If it thought that the appraisal would give it full value, it would be indifferent between keeping the stake and selling to Northeast. The district judge's reading of §11.5 reduces

the opportunity for valuation errors. That plus the caption and the normal understanding of the phrase "to each other" suffice to support the judgment.

AFFIRMED

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*