# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 26, 2012

No. 12-20157

Lyle W. Cayce
Clerk

DARTAMERICA, INCORPORATED

Plaintiff

v.

MEMC PASADENA, INCORPORATED,

Defendant–Third Party Plaintiff –
Appellee

v.

C.H. ROBINSON WORLDWIDE, INCORPORATED,

Third Party Defendant – Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-3128

Before JOLLY, BENAVIDES, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

DartAmerica, Inc. ("Dart") sued MEMC Pasadena, Inc. ("MEMC") for breach of contract damages. The two parties settled their dispute, and the district court dismissed their claims against one another with prejudice. MEMC,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-20157

however, had filed a third-party complaint in the action against C.H. Robinson Worldwide, Inc. ("Robinson"), alleging Robinson was liable for the amount MEMC had paid to settle with Dart. After a three-day bench trial, the district court ruled that Robinson had breached its agreement with MEMC and awarded MEMC $445,000 in actual damages plus attorney's fees and pre-judgment interest. We AFFIRM.

## I.

After a bench trial, we review a district court's conclusions of law *de novo* and its findings of fact for clear error. *See Preston Exploration Co., L.P. v. GSF, L.L.C.*, 669 F.3d 518, 522 (5th Cir. 2012). The interpretation of a contract is a question of law, not fact, except for when extrinsic evidence has been used in interpreting an ambiguous contract. *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1048 (5th Cir. 1998) (inset quotation marks and citations omitted). Whether a contract is ambiguous is a question of law, but once we determine legal ambiguity, the fact finder's interpretation deserves traditional deference. *Id.* As the case was brought to the district court on diversity jurisdiction, the substantive law of Texas applies. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938).

## II.

MEMC manufactures silicon wafers used in computer chips and solar panels. As part of its manufacturing process, it requires shipments of a hazardous gas called silicon tetrafluoride ("STF"). MEMC cannot store STF at its main plant in Pasadena, Texas, so it it contracts with private "haulers" to transport gas-filled containers to Pasadena.

In 2008, MEMC expanded its manufacturing capacity and contracted with Robinson for management consulting services. MEMC contracted with Robinson as a "one-stop" shop that could manage all of the private carriers delivering STF to the plant. Pursuant to its obligations under a Transportation Management

No. 12-20157

Agreement ("Management Agreement") it signed with MEMC, Robinson identified Dart, a new trucking company that began transporting STF to the Pasadena facility. MEMC signed a separate Transportation Service Agreement ("Transportation Agreement") with Dart; however, MEMC never paid Dart directly. All money flowed through Robinson.

The Transportation Agreement contemplated a three-month "Trial Period," the purpose of which was to allow MEMC an opportunity to evaluate Dart's performance and determine whether the parties' business relationship should continue into the future. From the beginning of the relationship, Dart had difficulty meeting its requirements under the agreement. Despite Dart's difficulties, MEMC did not terminate the agreement per its option to do so. Instead, one day before the trial period ended, MEMC made the decision to extend the trial period to give Dart a second chance. MEMC sent such an email (the "Email") to notify Robinson, but, because it was initially addressed to an incorrect email address, the Email was not received by Robinson until two days *after* the end of the trial period.[1]

The subsequent mixup, which forms the basis of this lawsuit, was this: Robinson did not forward the Email and did not tell Dart that MEMC was proposing an extension of the original trial period; neither Dart nor Robinson, in turn, ever informed MEMC whether the extended trial period had been accepted. The parties went about their business, each operating on its own assumptions about the contractual relationship. Several months later, in February 2009, MEMC terminated the Management Agreement with Robinson and the Transportation Agreement with Dart, during what it believed to be the

---

[1] The email, sent on October 31, 2008, was sent by Doug Rice, MEMC's representative in charge of the Dart project, to Andrew Pacini, MEMC's primary contact at Robinson and the Account Manager for the MEMC/Dart relationship.

3

extended trial period.  Dart, apparently in the dark about the Email, was thus incredulous that the contract had been breached by MEMC.

Consequently, in September 2009, Dart sued MEMC, based on the theory that Dart had never agreed to the extended trial period.   As we have noted, MEMC filed an answer and a third-party complaint against Robinson.  MEMC settled with Dart for $445,000, but the dispute with Robinson proceeded to trial, where the court, after a three-day bench trial, issued findings of fact and ruled that Robinson had breached its agreement with MEMC.  On this appeal, we review whether the district court erred in finding breach on the part of Robinson. The primary question focuses on the Email and the parties' duties with respect thereto.

## III.

This court reviews the lower court's interpretation of unambiguous contractual language *de novo* but defers to the court's interpretation of ambiguous provisions unless they are clearly erroneous.  *Paragon Res., Inc. v. National Fuel Gas Distrib. Corp.*, 695 F.2d 991, 995 (5th Cir. 1983).  We therefore begin by considering the unambiguous language of the Management Agreement between MEMC and Robinson.  It provided that Robinson was to supply services "related to the capture, tracking[,] archiving and reporting of various transportation related information for entities interested in such information to assist with and fully manage their day-to-day business operations."  The Agreement also provided: "[T]he parties expressly agree that [Robinson] has no responsibility for the terms of the contracts between [MEMC] and its motor carriers."   A plain language reading of the Management Agreement provisions would not impose a duty on Robinson to relay communications relating to the extension of a trial period because the proposed extension related to the terms of the Transportation Agreement between MEMC and its motor carrier, Dart.

No. 12-20157

The Management Agreement, however, goes on to provide: "To the extent that any term or condition of **Appendix A** may conflict with or differ from the provisions of this Agreement, the terms and conditions of **Appendix A** shall control and take precedence." Appendix A states that Robinson will provide: "a turn key management service for the transportation of [MEMC's] tankers"; a "[s]ingle point of contact and a dedicated customer service team for [MEMC] . . . responsible for the management of all day to day Freight transportation operations"; "[p]roblem resolution"; and "[e]nforcement of SOP's and contract agreement between [MEMC] and carrier, and enforcement to any penalties for non performance." A plain language reading of these provisions, in the light of the unambiguous primacy the parties gave to the Appendix, supports the district court's interpretation and conclusion that Robinson's duties to provide "[p]roblem resolution" and be a "[s]ingle point of contact and a dedicated customer service team for [MEMC] . . . responsible for the management of all day to day Freight transportation operations" encompassed relaying communications between MEMC and Dart, duties Robinson was found to have breached.

Alternatively, disregarding the Appendix's primacy, these apparently competing provisions—the terms of the Management Agreement and the Appendix A provisions—would establish only ambiguity, which would lead the court to consider extrinsic evidence, *see Thornton v. Bean Contracting Co., Inc.*, 592 F.2d 1287, 1290 (5th Cir. 1979); whereupon, on appeal, we would consider the district court's relevant findings of fact under the "clearly erroneous" standard. *See Paragon Res., Inc.*, 695 F.2d at 995. Although the parties did not address this issue in the express terms we have set forth, we, nevertheless, will give it our attention because the argument is embedded in, and underlies, their overall arguments.

In this respect, the district court, in a conclusory fashion, held that Robinson breached its Management Agreement with MEMC "by failing to fully

inform Dart of MEMC's desires and communications, including but not limited to MEMC's desires to extend the Trial Period" and "by failing to inform MEMC of Dart's intentions, and by failing to accurately communicate Dart's desires to MEMC." However, the district court did make findings regarding the course of performance between MEMC and Robinson. Specifically, the district court found that Robinson employees "understood that it was their job to enforce the contract agreement between MEMC and Dart," that a "majority of the communications between Dart and MEMC went through C.H. Robinson," that "C.H. Robinson never instructed MEMC to speak with Dart directly, as opposed to going through Robinson," and that Robinson did not "inform [MEMC] that MEMC should not use C.H. Robinson as a single point or contact, but instead, C.H. Robinson encouraged MEMC to use C.H. Robinson as a single point of contact."

The district court's findings regarding course of performance support the imposition of a duty on Robinson to convey information from MEMC to Dart relating to the Transportation Agreement. The district court's findings concerning course of performance were not clearly erroneous because they were a "plausible account of the evidence considered against the entirety of the record." *N.A.A.C.P. v. Fordice*, 252 F.3d 361, 365 (5th Cir. 2001).

We acknowledge that this is a close case presenting a close issue: whether Robinson, as the "single point of contact" responsible for management of all day-to-day transportation operations, had an obligation to forward an email that was already late. We have, however, reviewed the record, read the briefs, and heard well-presented oral argument in the case, from which we conclude the following: Because of the contractual provisions that gave primacy to comprehensive duties accepted by Robinson under Appendix A of the Management Agreement, we cannot say the district court erred in finding Robinson was obliged to forward the Email. Alternatively, even if we were to admit to contractual ambiguity, the district court's findings of fact clearly suggest Robinson was at fault; because, in

the event of contractual ambiguity, we only review those factual findings for clear error, we again cannot say that the district court erred in holding Robinson breached the Management Agreement and that its breach caused MEMC's damages in the amount of its settlement agreement with Dart.  Nor can we say the district court erred in awarding MEMC attorneys' fees and costs.  The judgment of the district court is therefore

AFFIRMED.