# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 15, 2024

Lyle W. Cayce
Clerk

No. 23-30892

─────────────

DEVIN BARRIOS,

*Plaintiff*,

*versus*

CENTAUR, L.L.C.,

*Defendant/Intervenor Defendant—Appellee*,

*versus*

RIVER VENTURES, L.L.C.,

*Defendant—Appellant*,

XL SPECIALTY INSURANCE COMPANY,

*Intervenor Plaintiff—Appellant*,

─────────────────────────

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:17-CV-585

─────────────────────────

Before ELROD, *Chief Judge*, and DENNIS and HIGGINSON, *Circuit Judges*.

PER CURIAM:

No. 23-30892

River Ventures, L.L.C. and its insurer XL Specialty Insurance Company (collectively "River Ventures/XL") appeal the district court's post-bench trial dismissal of their two maritime breach of contract claims brought against Centaur, L.L.C. We REVERSE and REMAND.

I

In 2015, Centaur entered into a Master Services Contract ("MSC") with United Bulk Terminals Davant, L.L.C. ("UBT"). Centaur is an employer of construction workers and UBT is an owner of a dock facility on the Mississippi River. As a task under the MSC, UBT hired Centaur to build a concrete containment wall around the edge of a dock at its facility. River Ventures, an owner and operator of crew boats, provided vessel transportation for Centaur's employees who worked on the dock project. Centaur employee Devin Barrios injured himself while transferring a generator from a River Ventures vessel onto a barge leased by Centaur. Litigation ensued, and the district court found River Ventures 100% at fault for the accident and imposed a $3.3 million judgment after a bench trial. River Ventures/XL satisfied the judgment and brought claims against Centaur under the MSC for breach of contract as third-party beneficiaries.[1]

Relevant to this appeal, the MSC imposed several insurance procurement obligations on Centaur in connection with the dock project, which were designed to mirror the MSC's requirement that Centaur indemnify River Ventures/XL for all claims brought for personal injury of a Centaur employee regardless of cause or fault.[2] This appeal only deals with

---

[1] The parties do not dispute that River Ventures/XL are proper third-party beneficiaries of the MSC.

[2] During the instant litigation, 33 U.S.C. § 905(b) ultimately nullified the MSC's indemnity provision because the district court classified Barrios as a longshore worker.

No. 23-30892

two alleged breach of contract claims related to the insurance requirements: (1) a breach of Centaur's obligation to procure a Protection & Indemnity ("P&I") insurance policy with coverage "not less than the P&I SP-23 (Revised 1/56) form of policy;" and (2) a breach of Centaur's obligation to procure an excess/bumbershoot insurance policy without a sole fault exclusion. The district court held a bench trial on these claims, during which it heard live testimony from two insurance expert witnesses. The district court issued findings of fact and conclusions of law dismissing the breach of contract claims after finding an ambiguity in the MSC about Centaur's insurance procurement obligations. River Ventures/XL timely appealed.

II

On appeal from a bench trial, we review findings of fact for clear error and legal issues de novo. *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 262 (5th Cir. 2011). A prior panel of our court has determined that the MSC at issue here is a maritime contract governed by federal maritime law. *Barrios v. Centaur, L.L.C.*, 942 F.3d 670, 680–82 (5th Cir. 2019). The determination of whether a maritime contract is ambiguous is a question of law reviewed de novo. *Thornton v. Bean Contracting Co.*, 592 F.2d 1287, 1290 (5th Cir. 1979). However, once the contract is found to be ambiguous, the determination of the parties' intent through extrinsic evidence is a question of fact reviewed for clear error. *Id.*

When interpreting a maritime contract, general principles of contract law apply from federal admiralty law, rather than from state law. *See Har–Win, Inc. v. Consol. Grain & Barge Co.*, 794 F.2d 985, 986–87 (5th Cir. 1986); *Int'l Marine, L.L.C. v. Delta Towing, L.L.C.*, 704 F.3d 350, 354 (5th Cir.

---

Nevertheless, uncontroverted record evidence establishes that one cannot assume at the insurance procurement stage that contractual indemnity will be voided.

2013). Federal maritime law "stems from the maritime jurisprudence of the federal courts, and is an amalgam of traditional common law rules, modifications of those rules, and newly created rules drawn from state and federal sources." *One Beacon Ins. Co.*, 648 F.3d at 262 (citations and internal quotation marks omitted). It is a basic "canon of contractual interpretation that . . . words and phrases in a contract [must] be given their plain meanings." *Cleere Drilling Co. v. Dominion Expl. & Prod., Inc.*, 351 F.3d 642, 650–51 (5th Cir. 2003). A contract is unambiguous when "its language as a whole is clear, explicit, and leads to no absurd consequences, and as such [when] it can be given only one reasonable interpretation." *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 n.6 (5th Cir. 2004). When a contract is unambiguous, no further interpretation may be made in search of the parties' intent. *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332–33 (5th Cir. 1981). "Disagreement as to the meaning of a contract does not make it ambiguous, nor does uncertainty or lack of clarity in the language chosen by the parties." *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009) (quotation omitted).

## III

As noted, the district court first dismissed River Ventures/XL's P&I breach of contract claim. This was error because the plain meaning of the MSC's language supports River Ventures/XL's interpretation and the district court's absurdity ruling finds no support in our caselaw.

Starting with the agreement's text, the MSC obligated Centaur to procure a P&I policy with coverage "not less than the P&I SP-23 (Revised 1/56) form of policy or its equivalent" and name River Ventures/XL and River Ventures' vessels as additional insureds. The American Institute of Marine Underwriters promulgated the P&I SP-23 (Revised 1/56) form in 1956 and the form is used as a benchmark for insurance procurement

requirements in the marine insurance industry. Both parties' experts testified that the ordinary meaning of "P&I SP-23 (Revised 1/56) form" is a P&I policy that includes coverage for personal injuries to crew/employees. Accordingly, by obligating Centaur to procure a P&I policy "not less than the P&I SP-23 (Revised 1/56) form of policy or its equivalent," the plain language of the MSC, when afforded its ordinary meaning, obligated Centaur to obtain a P&I policy that included crew/employee coverage. The P&I policy procured by Centaur excludes that coverage. *Barrios v. River Ventures, L.L.C.*, No. 21-30431, 2022 WL 1013848, at *3 (5th Cir. Apr. 5, 2022) (unpublished) (noting that Centaur's P&I policy "unambiguously excludes coverage for personal injury to any employees, regardless of whether they were employed by Centaur or any Additional Insured").

Despite the MSC's clear and explicit language, the district court found the MSC's P&I requirements ambiguous because an absurd consequence would result from interpreting the agreement to require Centaur to procure a P&I policy with crew/employee coverage. Specifically, the MSC also required Centaur to procure a Worker's Compensation policy with a Maritime Employers Liability endorsement, which provides employer coverage for liabilities resulting from vessel-related injuries to Centaur's employees. According to the district court, the possibility of duplicative coverage under the Worker's Compensation and P&I policies would exist. Relying on testimony from Centaur's expert, the district court found it absurd that the MSC would require Centaur to have double coverage for the same liability because the Worker's Compensation and P&I policies have escape clauses that would be triggered, resulting in no coverage at all under either policy.

No. 23-30892

We disagree. Applying Louisiana law,[3] our court has determined that when faced with two escape clauses threatening coverage, courts must find them "mutually repugnant" and make both policies liable for the claim. *Sifers v. Gen. Marine Catering Co.*, 892 F.2d 386, 394–95 (5th Cir. 1990); *see also Samuels v. State Farm Mut. Auto. Ins. Co.*, 939 So. 2d 1235, 1241 (La. 2006) (stating that under Louisiana law "when two policies afford the same layer of coverage and both contain conflicting 'other insurance' clauses which are irreconcilable, the policies must share liability on a pro rata basis"); *Shelter Mut. Ins. Co. v. State Farm Mut. Ins. Co.*, 993 So. 2d 236, 239 (La. App. 1st Cir. 2008) (explaining that when provisions are mutually repugnant "each insurer is held liable in proportion to the limit of its respective policy"). The parties agree that the escape clauses in the Worker's Compensation and P&I policies are both properly classified as escape clauses and mutually repugnant. Consequently, any assertion that interpreting the MSC's language according to its ordinary meaning would result in an absurd consequence—nugatory insurance policies—falls apart. Similarly, it is of no import that double coverage is expensive and may lead to protracted insurance coverage disputes for "[i]t is not the province of the court to relieve a party of a bad bargain, no matter how harsh." 11 WILLISTON ON CONTRACTS § 31:4 (4th ed.); *Univ. of Tex. Sys. v. United States*, 759 F.3d 437, 443 (5th Cir. 2014) ("Applying federal law in the contract context includes looking to 'principles of general contract law' that can be found in treatises or restatements of the law." (quoting *Franconia Assocs. v. United States*, 536 U.S. 129, 141–42 (2002))).

---

[3] To be sure, the interpretation of a marine policy of insurance is governed by relevant state law, which in our case is Louisiana law. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 320–21 (1955); *see also Barrios*, 2022 WL 1013848, at *3 ("In this case, Louisiana law applies.").

No. 23-30892

At bottom, the language of the MSC is clear, explicit, and leads to no absurd consequences. The MSC therefore unambiguously obligated Centaur to procure a P&I policy that provided coverage for crew/employee personal injuries. *Chembulk Trading LLC*, 393 F.3d at 555 n.6. The district court's contrary conclusion must be reversed.[4]

That leaves the excess/bumbershoot breach of contract claim. The MSC obligated Centaur to procure "[e]xcess liability insurance following form with underlying coverages providing limits liability of no less than USD $10,000,000" and "any endorsement naming [River Ventures/XL and River Ventures' vessels] as additional insureds shall not exclude from coverage the sole negligence of the Additional Insureds." Yet the excess/bumbershoot policy that Centaur procured excludes "any claims for liability arising out of the sole fault or sole negligence of the Additional Insured." The parties agree that the district court dismissed this breach of contract claim because it "found no breach regarding the duty to procure the underlying P&I coverage." Because of our disposition on the P&I breach of contract claim, we reverse and remand on the excess/bumbershoot breach of contract claim as well.

IV

We REVERSE the district court's judgment and REMAND for further proceedings not inconsistent with this opinion.

---

[4] We decline to reach Centaur's alternative argument that no breach of the P&I obligation occurred because "nothing in the [MSC] directed Centaur to schedule any vessels on its P&I policies." The district court had no reason to consider this argument below, and "[a]s a well-established general rule, this court 'will not reach the merits of an issue not considered by the district court.'" *Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 252 (5th Cir. 2022) (quoting *Baker v. Bell*, 630 F.2d 1046, 1055 (5th Cir. 1980)).